## VERGES ET AL. *v.* PIETRY ET AL.

APELACIÓN procedente de la Corte de Distrito de

San Juan.

No. 5.   Resuelto en Junio 17, 1905.

ACCIÓN REIVINDICATORIA.—Para ejercitar con éxito la acción reivindicatoria, el demandante debe fijar con precisión y claridad la cosa reclamada, y probar cumplidamente, no solo el dominio de la misma, sino también su identidad.
ID.—TÍTULO.—El título que sirva de base á toda acción reivindicatoria, debe ser un título cierto sobre las cosas que sean objeto de la reivindicación.
SENTENCIAS.—SUS EFECTOS SOBRE LOS QUE NO HUBIEREN SIDO PARTE EN EL JUICIO.—Las sentencias y resoluciones dictadas en un procedimiento, no obligan á aquéllos que no hubieren sido partes en el mismo.
PRUEBAS.—APRECIACIÓN.—CONCLUSIONES DE HECHO.—En los casos en que los tribunales inferiores estuvieren de acuerdo con respecto á los hechos probados en el juicio, el Tribunal de Apelación debe aceptar sus conclusiones, á no ser que al apreciar la prueba hubieren incurrido en manifiestos errores.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Rossy,* (Manuel F.)

Abogado de los apelados: *Sr. Cuevillas.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del Tribunal.

Vistos estos autos declarativos seguidos ante el extinguido Juzgado de 1a. Instancia de San Germán, y luego ante la suprimida Audiencia Territorial de esta Isla, entre partes de la una, como demandantes Da. María Verges y Remond y Da. Francisca Estevelina Remond, representadas y dirigidas ante esta Corte Suprema por el Ledo. Don Hilario Cuevillas Hernández, y de la otra, como demandados Don Domingo Pietri y otros, defendidos por el Letrado Don Manuel F. Rossy, sobre reivindicación de terrenos y otros extremos; cuyos autos penden ante Nos en virtud de recurso de casación, hoy de apelación, interpuesto por la representación de las demandantes contra las sentencias del Juez de 1a. Instancia de San Germán y de la Audiencia, las cuales, copiadas literalmente, dicen así:

"*Sentencia.*—En la Ciudad de San Germán, á once de Diciembre de mil ochocientos noventa y cinco, el Señor Licenciado Don Eduardo Acuña Aybar, Juez de 1a. Instancia de la misma y su Partido.

Vistos estos autos declarativos de mayor cuantía que penden en este Juzgado, seguidos entre partes, de la una; Doña Francisca Estevelina Remond y Vasallo, viuda de Vergés, de sesenta y cuatro años, propietaria y vecina de Ponce, y Doña María Vergés y Remond, casada, de atenciones domésticas, de veintiocho años, también vecina de Ponce, representadas por el Procurador Don Tomás Agrait y Font y defendidas por el Licenciado Don Herminio Díaz Navarro, en un principio y actualmente las representa el Procurador Don Manuel Catalá y Dueño y las defiende el Licenciado Don Ramón Quiñones, actores demandantes; y de la otra parte, Don Domingo Pietri y Pietri, soltero, agricultor, de sesenta y un años de edad y vecino de Yauco, representado por el Procurador Don Miguel Juan y Llaneras y defendido por el propio Licenciado López; Don Angel Pedro Agostini y Natali, viudo, propietario, de sesenta y ocho años y vecino de Yauco, representado por el Procurador Juan y Llaneras y defendido en un principio por el Licenciado Don Juan J. Perea y luego por el Licenciado López; Don Vicente Limarola y Benigni, casado, labrador, de cuarenta y ocho años y vecino de Ponce, representado por el mismo Procurador Juan y Llaneras y defendido en un principio por el Licenciado Don Juan J. Perea y luego por el referido Licenciado López; Don Francisco Lluch Negroni, casado, hacendado, de treinta y cinco años y vecino de Yauco, representado por el Procurador Don Pedro María Rossy y Guerra y defendido antes por el Licenciado Don Manuel Solís y últimamente por el citado Licenciado López; Don Francisco Pietri, Don José Gregory y Ramos y Fraticelli Hermanos, en rebeldía, y Don Rafael Gómez Díaz, en un principio en rebeldía, acreditándose luego su fallecimiento, todos reos demandados; sobre reivindicación de terrenos, nulidad de expedientes posesorios y enagenaciones por escrituras públicas y cancelaciones en el Registro de la Propiedad.

1o.—*Resultando*: que la parte actora solicita se la declare dueña de ochocientas y pico de cuerdas de terreno que reclaman y sus plantaciones, dejándoseles libres y expeditas á su disposición; que en cuato se opongan á los titulos de esa finca que producen, son nulos y de ningún valor los expedientes posesorios que de trescientos cincuenta, diez y ocho, veinte y cinco, treinta y dos cuerdas y un cuadro, se instruyeron á instancia de los Sres. Pietri y del Señor Gómez, las

ventas que éste hizo á Pietri y á Don Francisco Lluch, la que éste hiciera á los Pietri, el posesorio de diez y ocho y media y cuatro cuerdas más, instruído á instancia de Cedeño y Ayala, la venta que éste hizo á Don Domingo Pietri, el expediente posesorio de doscientas sesenta cuerdas instruído á instancia de Fratricelli Hermanos, la venta que éstos hicieron á Don Vicente Limarola, y la que éste otorgó á Don Angel Pedro Agostini, y que deben cancelarse en las inscripciones de todos esos actos nulos en el Registro de la Propiedad.

2o.—*Resultando*: que los demandantes fundan la acción real que establecen, en que, por decreto del Iltmo. Sr. Don Manuel López García, Intendente General de esta Isla, fecha cuatro de Diciembre de mil ochocientos treinta y cuatro en vista del expediente respectivo y del acuerdo tomado en veinte y dos de Agosto del mismo año por la Junta Superior de terrenos baldíos, confirió á Don Fernando María Pinatell, capitán de ingenieros, la propiedad y dominio pleno de cuatro caballerías de tierra radicadas en el barrio de las Vegas y lugar nombrado Río Chiquito, jurisdicción de Yauco, con los siguientes linderos: partiendo de un guaraguao por la parte del Norte, se midieron cuarenta cuerdas á la boca de una quebrada conocida por los Almendrones, colindando con Don Diego de Torres, de la referida quebrada por la parte del Este, veinte cuerdas á un algarrobo con terrenos baldíos, de este punto por la parte del Sud, fueron medidas cuarenta cuerdas á un hoyo grande, también con terrenos baldíos; del hoyo expresado por la parte del Oeste, veinte cuerdas al punto donde comenzó, colindando con el antes enunciado Don Diego Torres; según el documento que acompaña marcado con la letra "A"; que de ese título se tomó razón al fólio quince, vuelto, número diez y siete del libro de títulos de terrenos en las Reales Oficinas principales de esta Isla: que por escritura á ocho de Octubre de mil ochocientos cincuenta y tres, cuya copia se acompaña con la letra "B", vendió Don Fernando María Pinatell á Don Estéban Gallart las cuatro mencionadas caballerías de terreno ó sean ochocientas cuerdas por la suma de cuatrocientos pesos moneda corriente que confesó recibidos, y bajo los mismos puntos y colindancias de que se ha hecho mención: que por otra escritura, á treinta y uno de Mayo de mil ochocientos cincuenta y cuatro (copia que se acompaña con la letra C), Don Estéban Gallart vendió á Don Juan Aubert las mencionadas ochocientas cuerdas de terreno, bajo los propios puntos y linderos por cuatro mil pesos macuquinos que confesó recibidos; que, según la copia de certificación librada por el agrimensor Don

Francisco Valls, (acompañada con la letra D), el agrimensor Don P. L. Verges, el treinta de Marzo de mil ochocientos cincuenta y cinco, en virtud de comisión del Juez de 1a. Instancia de Ponce, se trasladó al Partido de Yauco y con conocimiento del Juez Local y asistencia del Comisario del barrio y de los dueños de los terrenos limítrofes que designaron sus respectivos linderos y prestaron su conformidad, deslindó la mencionada finca, en la forma que aparece de aquella certificación: que por escritura en Yauco, á doce de Noviembre de mil ochocientos cincuenta y cinco, (copia acompañada con la letra E) vendió á Don Juan Aubert, á Don Pedro Mompesart el referido terreno, libre de cargas, por cinco mil quinientos pesos macuquinos que confesó recibidos, haciendo constar que habiendo variado los colindantes que tenía la finca al adquirirla, verificaba la trasmisión bajo los siguientes: comenzando por el Sud, con terrenos de Juan Antonio Montes, que fueron de Don Diego de Torres, desde un tocón de guaraguao al margen derecho del río Chiquito, y otro de laurel á la parte opuesta, línea recta á otro tocón de aguacatillo, y un arbolito de Pomarosa en el camino de los Carrizales, punto con dicho Montes al Sud y Don Santos Semidey, al Este, con los terrenos que fueron de Don Félix Mattey. Por el Saliente, con los últimos, los de Don Silvestre Fraticelli y de Don Juan Bautista Plumey, y por todo el camino dicho de los Carrizales ó de Lares hasta un bacao silvestre en la embocadura del mismo camino con otro que nombran de las aceitunas, ó sea la línea divisoria de la Jurisdicción de Yauco y San Germán; por el Norte, con otros terrenos de la sucesión de Don José María Pacheco, por el camino de las aceitunas, que pasa sobre la cuchilla firme, divisoria de los citados partidos hasta un árbol de mato ó algarrobo de la sierra, marcado con una cruz al márgen Sud del propio camino de las aceitunas, que es punto con tierras compradas por Felipe Ayala á Don Antonio Cabassa y por el Poniente colindante con estas últimas desde el dicho árbol, línea recta á caer al ya citado Río-chiquito, á un pequeño árbol de capá y dos palmas de sierra que se hallan unidas en medio de dicho río, frente á una quebrada seca que saliendo del Poniente desemboca en ese lugar, y forman dichos árboles el segundo punto divisorio con el citado Cabassa, y de este punto siguiendo el río Chiquito, agua abajo, hasta el tocón del guaraguao, nombrado al principio, punto indicado del dicho Antonio Montes: que Don Pedro Mompesart falleció el ocho de Enero de mil ochocientos cincuenta y siete, bajo testamento cerrado que otorgara en diez de Agosto de mil ochocientos cincuenta y seis, declarado tal

por auto de diez de Julio de mil ochocientos sesenta, en cuyo testamento, por carecer de forzosos, instituyó á Don Pedro Lázaro y Verges por su único y universal heredero de todos sus bienes, acciones y derechos, entre los que se relaciona la finca de ochocientas cuerdas y pico, haciendo constar que tenía sobre ella un pleito pendiente que su sucesión perseguiría como le pareciese: que fallecido Mompesart, entró en posesión su heredero de las ochocientas cuerdas, acudiendo en el mismo año mil ochocientos sesenta al Gobierno General los Señores Don Felipe Ayala y Don Silvestre Fraticelli, pretendiendo cada uno cuatrocientas cuerdas de las citadas ochocientas, por considerarlas baldías, toda vez que el primitivo concesionario señor Pinatell ni sus sucesores, habían cumplido las condiciones de cultivo que se le impusieron en la concesión, formándose con motivo de esa solicitud el oportuno expediente que en diez y seis de Septiembre de mil ochocientos sesenta y tres acordó la Junta de baldíos sin lugar las pretensiones de Ayala y Fraticelli: que en veinte de Julio de mil ochocientos setenta y cinco, Don Celestino Arizmendi, vecino de Yauco, denunció al Gobierno General las usurpaciones de que eran objeto, tierras que decían eran de su propiedad, denunciando los usurpadores y presentando varios documentos que justificaban su propiedad, entre los que eran los principales una escritura de venta á su favor, otorgada por Don Felipe Ayala y un contrato privado de cesión de su hermano político Don José María Rodríguez, de doscientas cuerdas radicadas en el barrio de Vegas, que le fueron concedidas por la Junta Superior de baldíos, y de la que no había podido obtener título de amparo por oponerse Don Pedro Lázaro Verges, en pleito que seguía con el dicho Rodríguez ante el Juzgado de San Germán, y practicada información sobre esos hechos, apareció que todas las instrucciones denunciadas aparecían en terrenos baldíos, y no en los de Arizmendi, al que no se le conocían terrenos de ninguna clase, pasándose el expediente á la inspección de montes, la que pidió se le diese conocimiento del resultado de la oposición del Señor Verges á la concesión de Don José María Rodríguez, cuyo dato le fué suministrado, y el Gobierno General, de acuerdo con aquella inspección, expidió un decreto en cinco de Octubre de mil ochocientos setenta y seis, ordenando entre otras cosas la incautación por el Estado de los terrenos litigiosos, y llevada á efecto la orden en catorce de Diciembre del mismo año, Don Pedro Lázaro Verges pidió la suspensión de tales diligencias y promovió un recurso contencioso-administrativo, que en sentencia de veinte y cinco de Abril de mil ochocientos setenta y nueve, fué

resuelto en conformidad con lo que aquél suplicara, revocando la orden de cinco de Octubre de mil ochocientos setenta y seis, cuya sentencia fué confirmada por Real Decreto de veinte de Febrero de mil ochocientos ochenta y dos, y puesto el cúmplase por auto de tres de Mayo del mismo, quedando pendiente lo que pudiera resultar del pleito entre Verges y Don José María Rodríguez en el Juzgado de San Germán (certificación fólio 37); que en tres de Septiembre de mil ochocientos ochenta y cuatro, falleció Don Pedro Lázaro Verges, bajo testamento que otorgara en la Notaría de Don Francisco Parra, á nueve de Junio del mil ochocientos ochenta y tres, declarando que era casado con Da. Francisca Estevelina Remond, con la cual había tenido dos hijos, nombrados Juan Pedro Arturo y María Teresa Horacia, á los que instituyó por sus únicos y universales herederos, haciendo constar las aportaciones matrimoniales consistentes en diez mil duros por cada parte, (documentos folios 59 y 66); que habiendo fallecido Don Juan Pedro Arturo Verges y Remond, fué declarada heredera abintestato su madre Doña Francisca Estevelina Remond por auto de diez y seis de Marzo de mil ochocientos noventa y tres (copia folio 67); que por escritura en esta Ciudad, á veinte y uno de Octubre de mil ochocientos noventa y tres, Don Heraclio Rodríguez y Pacheco, con poder bastante de su padre Don José María Rodríguez y Arredondo, declaró en nombre de éste, que se apartaba y separaba de toda acción y derecho que pudiera tener á las doscientas cuerdas de terreno que solicitó del Gobierno General cómo baldías y que dieron lugar al litigio que sustanciara y siguiera Don Pedro Lázaro Verges, pues se encontraba Rodríguez completamente convencido de que ese terreno estaba enclavado dentro del perímetro de las ochocientas cuerdas que, en propiedad y dominio, correspondían al Señor Verges y hoy á su sucesión (copia fólio 70); que con vista de esos documentos fué hecha la inscripción de las ochocientas cuerdas proindiviso y por derechos hereditarios á favor de Da. María Teresa Horacia Verges y Remond y Da. María Francisca Estevelina Remond, viuda de Verges, bajo las colindancias que en la fecha de la inscripción tenía la finca, que son las siguientes: por el Norte, Don Nicolás Martínez y Manuel Cruz, antes Don José María Pacheco, y Tomás Ramírez y el mismo Manuel Cruz, antes el mismo Pacheco y Felipe Ayala, antes Don Antonio Cabassa; por el Sud, Juan Dionisio Aguilera, Lorenzo Vélez, Cipriano Galarza. Juan Antonio Morales, Juan Antonio Montes, antes Don Basilio y Don Diego Torres y Don Santos Semidey; al Saliente, Don Juan Plumet y Don Silvestre Fraticelli, y al Poniente Felipe Ayala, Ma-

nuel Alvino, Florencio González, Juan Cedeño y Victoriano Cruz, dándose á la finca que primeramente se le demarcó con cuatro caballerías ó sean ochocientas cinco cuerdas diez y nueve décimas, trescientas diez y seis hectáreas, cuarenta y siete áreas y sesenta y ocho centiáreas, cuyos linderos y verdadera situación de la finca, con vista de una certificación de la Alcaldía de Yauco, fueron rectificados en la siguiente forma: al Norte, Don Cárlos Molina, Don José Molinelli y Don Antonio Molina; al Sud, Don Domingo Pietri y Hermanos, al Este, Don Juan Domingo Pietri, Don Fernando Amill y Don Victoriano Torres, y al Oeste, Don Angel Pedro Agostini; que Don Domingo y Don Francisco Pietri, posesionándose indebidamente de trescientas cuarenta cuerdas y cincuenta más que forman parte de la indicada finca, y que dicen hubieron por compra á distintas personas, promovieron expediente para acreditar la posesión en que se hallaban de las referidas cuerdas, cuyo expediente fué aprobado por auto de veinte y uno de Junio de mil ochocientos ochenta y seis é inscrito en el Registro á los folios 205 y 209 del tomo séptimo del Ayuntamiento de Yauco, fincas números trescientos setenta y tres y trescientas setenta y cuatro, inscripciones primeras; que Don Rafael Gómez y Díaz, posesionándose en igual forma de diez y ocho cuerdas, instruyó expediente posesorio aprobado por auto de quince de Marzo de mil ochocientos ochenta y siete, inscribiéndose en el Registro al folio 60 del tomo noveno del Ayuntamiento de Yauco, finca número cuatrocientos cincuenta y ocho, inscripción primera, cuyo terreno vendió Gómez en dos mil pesos á Don Domingo y Don Francisco Pietri, por escritura en Yauco á veinte y tres de Diciembre de mil ochocientos noventa, que fué objeto de la inscripción segunda: que el mismo Gómez, posesionándose de veinte y cinco cuerdas más de la finca objeto de este litigio, instruyó expediente posesorio que se aprobó por auto de veinte de Octubre de mil ochocientos noventa, inscribiéndose al folio doscientos treinta y tres del tomo doce de Yauco, finca número doscientos sesenta, inscripción primera, que luego Gómez vendió á los Sres. Pietri por escritura de veinte y tres de Diciembre de mil ochocientos noventa, objeto de la inscripción segunda: que en esa misma escritura, inscrita al fólio 237 del tomo doce de Yauco, finca número seiscientos veinte y uno, inscripción segunda, hizo venta Gómez á los Señores Pietri de otras treinta y dos cuerdas y un cuadro, parte de la finca reclamada, de cupa porción había hecho instruir antes otro expediente posesorio que fué aprobado por auto de veinte de Octubre de mil ochocientos noventa y que fué motivo á la inscripción primera del inmueble: que

el mismo Don Rafael Gómez, en escritura de veinte y siete de Octubre de mil ochocientos ochenta y uno y ocho de Julio de mil ochocientos ochenta y dos, ante el Notario de Yauco Don Juan Z. Rodríguez, adquirió de Don José Gregory Ramos veinte cuerdas de la finca reclamada, inscribiéndose esos documentos al fólio 100 del tomo trece de Yauco, inscripción primera de la finca número seiscientos cincuenta, que trasmitió Gómez á Don Francisco Lluch Negroni en escritura de veinte y dos de Diciembre de mil ochocientos noventa, que. figura en la inscripción segunda de esa finca: que Don Francisco Cedeño y Ayala instruyó expediente posesorio de veinte y dos y media cuerdas de terreno que vendió á Don Domingo Pietri en escritura de veinte y seis de Abril de mil ochocientos noventa y dos, cuyos documentos aparecen inscritos al fólio 184 del tomo trece de Yauco, finca número seiscientos sesenta y siete, inscripciones primera y tercera: que los Señores Fraticelli Hermanos, y en su representación D. Felipe Fraticelli y Pietri, hicieron instruir con respecto á doscientas sesenta cuerdas de la finca litigiosa, otro expediente posesorio que fué aprobado por auto de veinte y nueve de Agosto de mil ochocientos noventa, vendiendo esa cantidad de terreno, por escritura de cuatro de Septiembre de mil ochocientos ochenta y dos á Don Vicente Limarola y Benigni, el que á su vez la trasmitió por otra escritura de cinco de Marzo de mil ochocientos noventa á Don Angel Pedro Agostini, inscribiéndose todas esas operaciones á los fólios 87 al 100 del tomo segundo, fólios 97 y 102 del tomo sexto de Yauco, y que, según las certificaciones que se acompaña, fólios 94 y 100, no obtuvo resultado el acto de conciliación por no asistir los demandados.

3o.—*Resultando:* que admitida la demanda y conferido traslado á los demandados, solo se personaron Don Domingo Pietri, Don Francisco Lluch Negroni, Don Francisco Cedeño y Ayala, Don Vicente Limarola y Benigni y Don Angel Pedro Agostini, siéndole acusada rebeldía á los demás con excepción de Don Rafael Gómez Díaz, que falleció posteriormente, ignorándose sus herederos.

4o.—*Resultando:* que, en cuanto á los demandados ausentes, D. José Gregory Ramos y Fraticelli Hermanos, se les llamó por edictos que se publicaron por dos veces consecutivas en la Gaceta Oficial.

5o.—*Resultando:* que el demandado Don Domingo Pietri y Pietri, antes de contestar la demanda, acompañó al Juzgado, fólio 245, copia

de la escritura de venta que le otorgara Don César de Guillermo, ingeniero Inspector de Montes, en nombre del Estado de cincuenta y ocho cuerdas de terreno, equivalentes á veinte y dos hectáreas, cincuenta y seis áreas, cincuenta y tres centiáreas, radicadas en el barrio de Rubias, sitio de las Aceitunas, término municipal de Yauco, que, según deslinde y mensura practicadas por dicho Inspector, resultaron baldías y propias del Estado, verificándose la venta por cuatro mil novecientas sesenta y cuatro pesetas treinta y seis centavos, satisfecha, mitad de contado y mitad á plazos, manifestando que por no hallarse inscritas en el Registro á nombre del Estado las referidas cincuenta y ocho cuerdas, inscribió la posesión de ellas á su nombre y al de su hermano Don Francisco, agrupadas á otras suertes de tierra, según la certificación que también presenta, folio 251 vto., y alega, que estando comprendido ese terreno en la presente demanda de reivindicación, solicitaba se notificara esa demanda al representante del Estado como obligado á la evicción y saneamiento de la cosa vendida; á lo que se accedió, practicándose la notificación al Iltmo. Sr. Fiscal de la Audiencia de lo Criminal de Mayagüez, fólio 302, vto.

6o.—*Resultando*: que también el otro demandado Don Francisco Lluch Barreras, antes de contestar la demanda pidió se notificara ésta á Don Rafael Gómez Díaz, vendedor de las veinte cuerdas de terreno, cuya reivindicación solicitan los demandantes, como lo justifica con la copia de escritura, fólio 269, y la certificación de inscripción, folio 275, que acompañara; á cuya pretensión se accedió sin poderse llevar á cabo la notificación por el fallecimiento de Don Rafael Gómez Díaz y desistimiento voluntario luego del propio Lluch Barreras.

7o.—*Resultando*: que el Procurador Juan y Llaneras, en nombre de Don Domingo Pietri y Pietri, al contestar la demanda solicita que se le absuelva de ella, imponiendo á la parte actora perpétuo silencio y las costas, y además que se declare la nulidad y consiguiente cancelación de la inscripción de dominio que á nombre de los señores demandantes se ha extendido en el Registro de la Propiedad de terrenos anteriormente inscritos proindivisos, á nombre de su representado y de su hermano Don Francisco Pietri y Pietri, para lo cual reconvino á dichos demandantes por mútua petición ó como más haya lugar en derecho, alegando la excepción *sine actione agis* y para su caso la de prescripción y haciendo uso de la acción de nulidad por lo que se refiere á la reconvención, fundándose en cuan-

to á las primeras excepciones en que si bien á Don Fernando María· Pinatell fueron mercedadas en cuatro de Diciembre de mil ochocientos treinta y cuatro por la Junta Superior de terrenos baldíos, cuatro caballerías de terreno en el barrio de las Vegas, lugar del Río-chiquito, del término de Yauco, bajo la condición de cultivarlas en el preciso término de dos años y que en el título de concesión se le mandó poner en posesión por el Juez del territorio, es lo cierto que Pinatell no cumplió con el mandato, pues no obtuvo nunca la posesión de terreno mercedado ni tampoco cumplió la condición de la concesión, según lo declaró y confesó paladinamente en el juicio seguido ante el Juzgado de Ponce entre Don Pedro Mompesart y Don Felipe Ayala en mil ochocientos cincuenta y siete y cincuenta y ocho: que en las escrituras de venta de ese terreno otorgada por Pinatell á Gallart, por éste á Aubert y por éste á Mompesart, quedó salvada por los vendedores la responsabilidad del saneamiento: que tanto la venta de Gallart á Aubert, cuanto la otorgada por éste á Mompesart fueron simuladas y de valor entendido con Don Pedro Lázaro Verges, según lo declararon y confesaron los propios Gallart y Aubert en juicio seguido en el Juzgado de Ponce en mil ochocientos cincuenta y ocho entre Don Pedro Mompesart y Felipe Ayala, sobre aparcería de las mismas tierras, mercedadas á fólios 218 y 220 de los autos: que el deslinde y mensura practicados por Don Pedro Lázaro Verges, de las mencionadas ochocientas cuerdas del barrio de las Vegas, aunque hace constar en la certificación que tales operaciones se hicieron con conocimiento del Juez Local y asistencia del Comisario del barrio y conformidad de los dueños de los terrenos colindantes, ninguno de ellos aparece autorizando la certificación, sólo el propio Verges: que en los años mil ochocientos cincuenta y siete y mil ochocientos cincuenta y ocho se tramitó en el Juzgado de primera instancia de Ponce, en juicio civil ordinario por Don Pedro Mompesart contra Felipe Ayala, para que desocupara la estancia de las Vegas que opinaba Mompesart tenía Ayala á partir utilidades, y en ese juicio fué fallado en primera instancia el veinte de Junio de mil ochocientos cincuenta y ocho, declarándose en la sentencia la simulación de las ventas por Gallart y Aubert, declarándose dueño y poseedor de las tierras á Felipe Ayala y declarándose improbada la demanda con imposición de las costas al actor, cuya sentencia fué confirmada por la Excma. Real Audiencia de Puerto Rico en veinte y nueve de Marzo de mil ochocientos cincuenta y nueve, siendo éste el pleito pendiente á que se refirió Mompesart en su testamento: que ni Pinatell, ni Gallart, ni Mompesart, ni Verges, po-

seyeron nunca las tierras mercedadas al primero, como lo demuestra
el que no se le dió á éste la posesión por el Juez del territorio de
Yauco, la declaración de Pinatell de no haber hecho labor alguna
en las referidas tierras, la simulación de los contratos de compra
venta antes referidos, el resultado del juicio ordinario seguido por
Mompesart contra Felipe Ayala, el haber continuado éste pose-
yendo las tierras después de fallado el pleito, y el haberse abierto
el testamento de Mompesart en que instituye heredero de esas tie-
rras á Verges en diez de Julio de mil ochocientos sesenta; que si
bien en el asiento de inscripción de las tierras á petición y nombre
de las demandantes, se hace constar que Don Pedro Mompesart to-
mó posesión de aquéllas en primero de Julio de mil ochocientos
cincuenta y siete, según documento que aparecía, bajo el número
once, en el asiento de presentación, es lo cierto que ese documento
no se ha traído al juicio y esa afirmación se destruye por el hecho
de haber fallecido Mompesart en ocho de Enero de mil ochocientos
cincuenta y siete, seis meses antes de la supuesta toma de posesión,
y por el litis seguido contra Felipe Ayala en mil ochocientos cin-
cuenta y siete y cincuenta y ocho en reclamación de las mismas tie-
rras que poseía Ayala antes y después del fallo superior, dictado en
veinte y nueve de Marzo de mil ochocientos cincuenta y nueve, de-
clarándole poseedor legítimo de las tierras; que el expediente se-
guido por Don Pedro Lázaro Verges ante el Consejo Contencioso-
administrativo con el Gobierno General sobre reversión al Estado
de terrenos baldíos, de que conoció en grado de apelación el Con-
sejo de Estado, no se refiere en nada ni tuvieron intervención en
ese expediente los antiguos dueños y poseedores de las tierras ad-
quiridas por Don Domingo y Don Francisco Pietri: que éstos ins-
cribieron á su nombre en el Registro de la Propiedad la posesión
de trescientas cuarenta cuerdas de terreno en el barrio de Rubias,
término municipal de Yauco, en veinte y seis de Julio de mil ocho-
cientos ochenta y seis, adquiridas en esta forma: ciento sesenta cuer-
das por compra á Don Rufino Ramos en mil ochocientos setenta:
cinco cuerdas á Anastasio Cruz en mil ochocientos setenta y seis:
cincuenta y ocho cuerdas al Estado en mil ochocientos setenta y siete:
sesenta cuerdas á Juan Cedeño en mil ochocientos ochenta y
cuatro: doce cuerdas á Ramón Camacho en mil ochocientos ochen-
ta y cuatro, y treinta cuerdas á Don Eugenio Ròdríguez en mil ocho-
cientos ochenta y cuatro: que las ciento sesenta cuerdas á Rufino
Ramos, proceden, sesenta cuerdas que pertenecieron y fueron po-
seídas por Don Agustín Sabater y Don Eugenio Rodríguez Feli-

ciano, hasta el año mil ochocientos treinta y cuatro en que las enagenaron á Felipe Ayala, quien continuó en la posesión tranquila, á título de dueño, hasta el siete de Marzo de mil ochocientos cincuenta y seis, en que por escritura pública las trasmitió á Rufino Ramos, el cual las tuvo en posesión, como dueño, hasta el veinte y ocho de Abril de mil ochocientos setenta y uno, en que por escritura pública las vendió á los hermanos Pietri y las otras cien cuerdas fueron poseídas por Don Eugenio Rodríguez Feliciano, hasta el año mil ochocientos treinta y cuatro, en que las enagenó á Felipe Ayala, poseyéndolas éste hasta el catorce de Mayo de mil ochocientos sesenta y dos, en que por escritura pública las vendió á Rufino Ramos, y éste las poseyó asímismo hasta el año de mil ochocientos setenta y uno en que las enagenó á los hermanos Pietri: que las cinco cuerdas adquiridas de Anastasio Cruz en mil ochocientos setenta y seis fueron poseídas por Felipe Ayala antes de mil ochocientos treinta y cuatro, hasta el año mil ochocientos sesenta y dos, en que Ayala las enagenó á Rufino Ramos, quien continuó en la posesión hasta el año mil ochocientos sesenta y cuatro en que las vendió á Anastasio Cruz y éste las poseyó á título de dueño, hasta mil ochocientos setenta y seis, en cuyo año las vendió á los hermanos Pietri, quienes la poseen pacíficamente, á título de dueño: que las quince cuerdas adquiridas de Antonio Ramos en mil ochocientos setenta y seis, fueron poseídas por su propietario Felipe Ayala desde antes de mil ochocientos treinta y cuatro, hasta el mil ochocientos cincuenta y siete, en que las vendió á Rufino Ramos, el cual continuó en la posesión hasta mil ochocientos sesenta y seis en que las enagenó á Don Antonio Ramos, y éste fué su poseedor hasta mil ochocientos setenta y seis en que las vendió á los hermanos Pietri: que éstos, en trece de Octubre de mil ochocientos setenta y siete, adquirieron por compra al Estado cincuenta y ocho cuerdas de terreno, según escritura que les otorgara el Ingeniero de Montes Don César de Guillermo, en nombre y representación del Estado y en virtud de la presente demanda, ha sido citado de evicción y saneamiento el representante del Estado: que las sesenta cuerdas compradas por los hermanos Pietri á Don Juan Cedeño en mil ochocientos ochenta y cuatro, fueron poseídas por Felipe Ayala antes de mil ochocientos treinta y cuatro, hasta el veinte y ocho de Junio de mil ochocientos sesenta y siete en que, por escritura pública, las vendió Ayala á Don Juan Bautista Montaggioni, el cual las poseyó hasta el treinta de Abril de mil ochocientos setenta y tres, en que, por documento privado, las vendió á Don Andrés Agostini, quién

continuó poseyéndolas hasta el cinco de Diciembre de mil ochocientos setenta y seis, en que, por escritura pública, las vendió á Don Juan Cedeño, siendo éste su poseedor hasta el veinte y ocho de Mayo de mil ochocientos ochenta y cuatro que las enagenó, por documento público, á los hermanos Pietri, fijándose cincuenta cuerdas, pero con la advertencia de que si resultaba mayor cantidad de terreno dentro de las colindancias determinadas, sería de los compradores, por cuyo motivo, medida la finca, resultan las sesenta cuerdas inscritas: que las doce cuerdas adquiridas de Ramón Camacho en mil ochocientos ochenta y cuatro, fueron poseídas por Felipe Ayala desde antes de mil ochocientos treinta y cuatro hasta el año mil ochocientos cuarenta y uno, en que las vendió á León Avilés y Vargas, quien continuó en su posesión hasta el mil ochocientos ochenta y dos en que las vendió á Ramón Camacho, inscribiéndolas en el Registro, continuando en la posesión hasta el siete de Mayo de mil ochocientos ochenta y cinco en que, por escritura pública, las vendió á los hermanos Pietri, y aunque en esa escritura se fijaron catorce cuerdas, sólo resultaron doce por la mensura practicada posteriormente: que las treinta cuerdas adquiridas de Don Eugenio Rodríguez, formaban parte de la hacienda nombrada "Josefina," antes "Manuela", propiedad de Don Manuel Olivieri, quien las enagenó á Rodríguez en diez y siete de Marzo de mil ochocientos setenta y dos, cuya escritura se inscribió en el Registro en veinte y cinco de Abril de mil ochocientos ochenta y cinco, habiendo adquirido Olivieri el dominio y posesión del terreno por compra que hizo de sesenta cuerdas en remate público en el concurso de Domingo Santiago, y setenta cuerdas compradas á diversos: que las cincuenta cuerdas inscritas á nombre de los hermanos Pietri, al folio 209, tomo séptimo de Yauco, su valor mil pesos, no se hallan enclavadas en las ochocientas cinco cuerdas que reclama la sucesión Vergés, lo que consigna en su demanda, que radican en el barrio de Rubias, mientras que las cincuenta cuerdas radican en el barrio de Río-prieto, poniente de Yauco, según consta de la inscripción que de las diez y ocho cuerdas compradas á Don Rafael Gómez Díaz, en escritura á veinte y tres de Diciembre de mil ochocientos noventa, vino poseyendo diez cuerdas Felipe Ayala, su anterior dueño, desde antes de mil ochocientos treinta y cuatro, como resto de las doscientas que había adquirido por compra á Don Agustín Sabater, hasta el año de mil ochocientos sesenta y siete en que las vendió á Gregorio Santiago, y el mismo Ayala, desde antes del año mil ochocientos treinta y cuatro, era dueño y poseedor de cincuenta cuerdas en el

barrio de Vegas, término de Yauco, las que vendió á Santiago Ruiz, en escritura á veinte y ocho de Julio de mil ochocientos cincuenta y tres, de las cuales Ruíz vendió privadamente ocho cuerdas á Gregorio Santiago en Febrero de mil ochocientos sesenta y siete, viniendo Santiago poseyendo los dos trozos de diez y de ocho cuerdas, hasta el cinco de Noviembre de mil ochocientos ochenta y uno, en que las enagenó á Don Santiago Chiaramonte por escritura de dicha fecha, viniendo Chiaramonte, poseyéndolas hasta el once de Enero de mil ochocientos ochenta y cinco en que privadamente las enagenó á Don Rafael Gómez Díaz y quien inscribió su derecho en el Registro en catorce de Abril de mil ochocientos ochenta y siete y continuó en la posesión hasta el veinte y tres de Diciembre de mil ochocientos noventa, en que las vendió á los hermanos Pietri y éstos la inscribieron asimismo en el Registro: que las veinte y cinco cuerdas adquiridas de Don Rafael Gómez Díaz, por escritura á veinte y tres de Diciembre de mil ochocientos noventa, las vino poseyendo pacíficamente su anterior dueño Felipe Ayala desde antes de mil ochocientos treinta y cuatro hasta el año mil ochocientos cincuenta y seis, en que las vendió á Rufino Ramos, el cual las poseyó hasta el año mil ochocientos sesenta y dos, en que las enagenó á Anastasio Cruz, quien las poseyó hasta el año mil ochocientos setenta y seis, en que realizó su venta á favor de Don Rafael Gómez Díaz, el cuál inscribió su derecho en el Registro en seis de Diciembre de mil ochocientos noventa, vendiéndolas luego á los hermanos Pietri, por documento público, en veinte y tres de Diciembre de mil ochocientos noventa, que también se inscribió en el Registro: que las treinta y dos cuerdas y un cuadro compradas á Don Rafael Gómez Díaz en veinte y tres de Diciembre de mil ochocientos noventa, las poseyó su anterior dueño Felipe Ayala desde antes de mil ochocientos treinta y cuatro hasta el año mil ochocientos cuarenta y tres en que las vendió al Sebastián Ramos, quien continuó en la posesión hasta mil ochocientos cincuenta y nueve, en que vendió veinte y cinco cuerdas y un cuadro á María Martina Rosario y Pérez, y siete cuerdas á Andrés Avilés y Ramírez, quienes poseyeron esas porciones hasta el año mil ochocientos sesenta y nueve en que las enagenaron á Don Rafael Gómez Díaz, que inscribió su derecho en el Registro, poseyéndolas en el Registro, digo como dueño, hasta el veinte y tres de Diciembre de mil ochocientos noventa en que las vendió á los hermanos Pietri y éstos inscribieron su título en el Registro: que las veinte cuerdas adquiridas de Don Francisco Lluch Negroni, éste las tenía inscritas en el Registro de la Propiedad desde cuatro

de Mayo de mil ochocientos noventa y uno y las había adquirido por compra á Don Rafael Gómez Díaz en escritura á trece de Enero de mil ochocientos ochenta y ocho, y Gómez las adquirió de Don José Gregory y Ramos en escritura á veinte y siete de Octubre de mil ochocientos ochenta y uno y ocho de Julio de mil ochocientos ochenta y dos: que las doscientas veinte y siete cuerdas adquiridas de Don Francisco Cedeño en escritura de siete de Junio de mil ochocientos noventa y tres, inscritas en el Registro, no se hallan comprendidas dentro de las colindancias de las tierras que reclaman los demandantes, que con las distintas suertes de tierras adquiridas por los hermanos Pietri, forman éstos una finca cafetal cultivada en su mayor parte, con establecimientos, máquinas, casas y demás accesorios, propios de su clase, por las que han venido sus dueños y poseedores pagando contribuciones al Estado y Municipio, teniendo un valor la finca de cuarenta mil pesos y que los antiguos poseedores de las diversas porciones de terreno que forman las fincas que se demarcan, de que son legítimos propietarios los hermanos Pietri, han satisfecho al Estado y Municipio la contribución territorial que por ella les fueron repartidas en los años en que respectivamente las poseyeron; y alegando en cuanto á la reconvención que los demandantes en los hechos de la demanda expresan que las varias fincas inscritas á nombre de los hermanos Pietri y cuyos folios, libros y números allí se determinan, se hallan enclavadas en el perímetro de las cuatro caballerías de terrenos mercedadas en mil ochocientos treinta y cuatro á Don Fernando María Pinatell, que son objeto de la misma demanda: que no obstante, tal afirmación, el día veinte de Septiembre de mil ochocientos noventa y tres, con posterioridad á las inscripciones de los hermanos Pietri, solicitaron y obtuvieron las demandantes la inscripción á su nombre de las cuatro caballerías, ó sean ochocientas cinco cuerdas diez y nueve céntimos en el Registro de la Propiedad, presentando para ello títulos de fecha anterior á los que sirvieron para las inscripciones hechas á favor de los hermanos Pietri: que á ser cierta la afirmación que sienta la parte demandante de que el terreno que forma las varias fincas de los hermanos Pietri, inscritas en los años mil ochocientos ochenta y seis, ochenta y siete, noventa y noventa y dos, en el mismo terreno, objeto de su reclamación, resulta evidentemente que la propiedad de un mismo inmueble ha sido inscrita á nombre de distintas personas y con diferente número de finca en el Registro: que en la demanda se consigna que Don Pedro Lázaro Verges falleció en tres de Septiembre de mil ochocientos ochenta

y cuatro, bajo testamento en que instituyó por herederos á sus dos hijos Don Juan Pedro Arturo y Doña María Teresa Horacia, falleciendo el primero en diez y ocho de Febrero de mil ochocientos noventa y tres, y por auto de diez y seis de Marzo siguiente fué declarada su heredera abintestato su señora madre Doña Francisca Estevelina Remond, quien inscribió á su nombre los bienes de su hijo provenientes de la herencia del padre, sin estar esos bienes inscritos previamente á nombre de su citado hijo.

8o.—*Resultando:* que el mismo Procurador Juan y Llaneras, como apoderado de Don Domingo Pietri, al contestar la demanda, acompaña como documento la copia simple fólio 304 del auto dictado por el Juzgado de Ponce en veinte y dos de Junio de mil ochocientos cincuenta y ocho en que se declara sin lugar la demanda interpuesta por Don Pedro Mompesart en el pleito civil ordinario que siguiera contra Felipe Ayala para que le desocupara la estancia de las Vegas que tenía á partir utilidad, rindiendo cuentas con pago de su producto, consignándose como fundamentos los mismos hechos que expresa Pietri en su contestación, cuyo auto se confirma por la Audiencia Territorial en veinte y tres de Marzo de mil ochocientos cincuenta y nueve por estimarse que no se había iniciado cuestión de propiedad y deslinde: la certificación folio 310 expedida por el Registrador de la Propiedad de este Partido en veinte y siete de Julio de mil ochocientos ochenta y seis, comprensiva de las inscripciones de posesión hechas á favor de Don Domingo y Don Francisco Pietri, de dos fincas rústicas, una de trescientas cuarenta cuerdas en el barrio de Rubias, del término de Yauco, que expresaron sus dueños habían adquirido sin título escrito por compra de ciento sesenta cuerdas á Don Rufino Ramos, cinco cuerdas á Anastasio Cruz en mil ochocientos setenta y seis, quince cuerdas á Antonio Ramos en el mismo año, cincuenta y ocho cuerdas al Estado en mil ochocientos setenta y siete, sesenta cuerdas á Juan Cedeño, doce cuerdas á Ramón Camacho, y treinta cuerdas á Don Eugenio Rodríguez en mil ochocientos ochenta y cuatro, y la otra de cincuenta cuerdas en el barrio de Río-prieto Poniente de Yauco, que expresaron haber comprado en mil ochocientos setenta y cuatro, veinte y cinco cuerdas á Don Antonio Seguí y las otras veinticinco cuerdas á Don Portalatín Almodovar en mil ochocientos ochenta y cinco; el testimonio fólio 317 de la escritura otorgada en Yauco ante el Alcalde ordinario Don Juan Rosas en siete de Marzo de mil ochocientos cincuenta y seis sobre venta por Felipe Ayala á Rufino Ramos de sesenta cuerdas de terreno poco más ó menos con

algunas fincas de café y plátanos en el barrio de Vegas, jurisdicción
de Yauco, que expresó Ayala haber comprado hacía más de veinte
años á Don Agustín Sabater y Don Enrique Rodríguez Feliciano, ve-
rificando la venta por trescientos pesos macuquinos recíbidos, cuya
venta se inscribió en el Registro en ocho de Marzo de mil ochocien-
tos noventa y cuatro : otro testimonio fólio 320 de la escritura otor-
gada en Yauco ante el Escribano Don Isidoro Arroyo á catorce de
Mayo de mil ochocientos sesenta y dos por Felipe Ayala, enagenando
á Rufino Ramos cien cuerdas de terreno montuoso en el barrio de las
Rubias, jurisdicción de Yauco, fincadas diez y seis cuerdas de pláta-
nos y café, adquiridas de Enrique Rodríguez Feliciano, y expresan-
do el vendedor que había hecho una justificación que se encontraba
agregada al pleito que se siguió con Don Pedro Lázaro Verges que
había ganado en primera instancia, según sentencia definitiva de
veinte y dos de Junio de mil ochocientos cincuenta y ocho, confirma-
da en segunda instancia en veinte y nueve de Marzo de mil ochocien-
tos cincuenta y nueve, cuya venta verificó por trescientos pesos reci-
bidos, y se inscribió en el Registro de la Propiedad en ocho de Mar-
zo de mil ochocientos noventa y cuatro : otro testimonio folio 324 de
la escritura otorgada en Yauco ante el Escribano Don Manuel Solís
á veinte y ocho de Abril de mil ochocientos setenta y uno por Rufino
Ramos sobre venta á favor de Don Domingo y Don Pablo Francisco
Pietri, de ciento sesenta cuerdas más ó menos de terreno, como se-
tenta sembradas de café y plátanos y el resto de monte, maleza y pas-
tos, radicadas en el barrio de Rubias, jurisdicción de Yauco, que ad-
quirió Ramos por compra á Felipe Ayala en escritura de siete de
Marzo de mil ochocientos cincuenta y seis y catorce de Mayo de mil
ochocientos sesenta y dos, verificando la venta por sesenta mil pese-
tas, parte recibida y el resto á plazos y fué inscrita en el Registro de
la Propiedad en igual fecha que las anteriores ; y en virtud de la ins-
tancia fólio 326 presentada al Registro por Don Domingo Pietri : otro
testimonio fólio 329 de la escritura otorgada en Yauco ante el Escri-
bano Don Manuel Solís á veinte y ocho de Junio de mil ochocientos
sesenta y siete por Felipe Ayala, enagenando á Don Juan Bautista
Montaggioni cincuenta cuerdas más ó menos de terreno, todas finca-
das de café y plátanos en el barrio de Rubias, jurisdicción de Yauco,
adquiridas hacía más de treinta años por compras á Don Agustín
Sabater y Don Enrique Rodríguez Feliciano, en mayor número de
cuerdas, verificándose la venta por cuatro mil escudos, parte satis-
fecho de cantidad y el resto á plazos, y fué inscrita en el Registro en
ocho de Marzo de mil ochocientos noventa y cuatro ; otro testimonio
fólio 334 de la escritura otorgada en Yauco ante el Notario Don Ma-

nuel Solís á 5 de Diciembre de mil ochocientos setenta y seis por Don Andrés Agostini, sobre venta á Don Juan Cedeño de cincuenta cuerdas más ó menos de terreno, todas fincadas de café y plátanos en el barrio de Rubias, jurisdicción de Yauco, que había adquirido por compra, en documento privado, á Don Juan Bautista Montaggioni, en treinta de Abril de mil ochocientos setenta y tres, verificando la venta por mil seiscientos pesos, parte al contado y parte á plazos, y fué inscrita en el Registro en la indicada fecha de ocho de Marzo de mil ochocientos noventa y cuatro: otro testimonio fólio 339 de la escritura otorgada en Yauco ante el Notario Don Juan Z. Rodríguez á veinte y ocho de Mayo de mil ochocientos ochenta y cuatro por Don Juan Cedeño y Caraballo, sobre venta á favor de Don Francisco y Don Domingo Pietri y Pietri, de cincuenta cuerdas más ó menos de terreno á café y plátanos en el barrio de Rubias, jurisdicción de Yauco, que había adquirido por compra á Don Andrés Agostini en escritura á cinco de Diciembre de mil ochocientos setenta y seis, verificando la venta por dos mil quinientos pesos recibidos y fué inscrita como las anteriores en ocho de Marzo de mil ochocientos noventa y cuatro en virtud de la instancia fólio 343 presentada al Registro por Don Domingo Pietri y Pietri: una certificación fólio 345 vto., expedida por el Registrador de la Propiedad en quince de Febrero del corriente año que comprende la inscripción de posesión hecha á favor de Don Ramón Camacho, de catorce cuerdas de terreno en el barrio de Rubias, jurisdicción de Yauco, que expresó haber adquirido en mil ochocientos ochenta y dos por compra á León Avilés y Vargas, sin título escrito: un testimonio fólio 348 de la escritura otorgada en Yauco, ante el Notario Don Juan Z. Rodríguez, á siete de Mayo de mil ochocientos ochenta y cinco por Ramón Camacho y Montes, sobre venta á favor de Don Domingo y Don Francisco Pietri y Pietri, de catorce cuerdas de terreno á café y plátanos en el barrio de Rubias, jurisdicción de Yauco, que había adquirido de León Avilés y Vargas, verificando la venta por ochocientos pesos recibidos; y una certificación fólio 352 vto., expedida por el Registrador de la Propiedad en veinte y tres de Febrero de mil ochocientos noventa y cuatro, comprendiendo la inscripción del dominio á favor de Don Eugenio Rodríguez y Nieves, de una hacienda cafetal denominada "Josefina", antes "Manuela", sita en el barrio de Rubias, término Municipal de Yauco, de una cabida de ciento treinta cuerdas, adquirida por compra á Don Manuel Olivieri en escritura á diez y siete de Mayo de mil ochocientos setenta y dos, y que hubo Olivieri sesenta cuerdas en remate público en el concurso de bienes de Domingo Santiago y las setenta restantes por compra á diversos repor-

tando la finca una hipoteca á favor de diversos acreedores y otra á
favor de Don Eugenio Rodríguez, cuya certificación comprende así-
mismo la inscripción de dominio á favor de Don Domingo y Don
Francisco Pietri, de treinta cuerdas más ó menos segregadas de di-
cha finca "Josefina", adquiridas de Don Eugenio Rodríguez y Nie-
ves por escritura en Ponce á treinta de Mayo de mil ochocientos
ochenta y seis; el testimonio fólio 356 de la escritura otorgada por
Don Eugenio Rodríguez y Nieves en la indicada fecha de treinta y
uno de Mayo de mil ochocientos ochenta y seis sobre venta de trein-
ta cuerdas de terreno á Don Domingo y Don Francisco Pietri: la
certificación fólio 366 vto., expedida por el Registrador de la Pro-
piedad en veinte y dos de Febrero de mil ochocientos noventa y cua-
tro, comprensiva de la inscripción de posesión á favor de Don Do-
mingo y Don Francisco Pietri, de cincuenta cuerdas de terreno á ca-
fé, plátanos y montes en el barrio de Rio-prieto Poniente, jurisdic-
ción de Yauco, adquiridas veinte y cinco cuerdas de Don Antonio
Seguí en el año mil ochocientos setenta y cuatro y otras veinte y
cinco cuerdas á Don Portalatín Almodovar, en mil ochocientos
ochenta y cinco, comprendiendo la certificación la anotación pre-
ventiva del presente juicio: el testimonio fólio 370, de la escritura
otorgada en Yauco en quince de Febrero de mil ochocientos sesenta
y siete por Felipe Ayala sobre venta á favor de Gregorio Santiago
de diez cuerdas de terreno, cinco de ellas fincadas, sitas en el barrio
de Rubias, jurisdicción de Yauco, con resto de las doscientas que
poseía Ayala y que hubo por compra á Don Agustín Sabáter, veri-
ficando la venta por ochenta escudos recibidos, insertándose en el
testimonio la nota de que en cinco de Noviembre de mil ochocientos
ochenta y uno había vendido Gregorio Santiago ese terreno á Don
Santiago Chiaramonti: la copia simple fólio 372 de la escritura otor-
gada en Yauco á veinte y ocho de Julio de mil ochocientos cincuen-
ta y tres por Felipe Ayala sobre venta á Santiago Ruiz de cincuenta
cuerdas de terreno de montes en el barrio de Vegas, jurisdicción de
Yauco, que hubo por distintas compras á diversos dueños, verifican-
do la venta por setenta y cinco pesos recibidos: la certificación fólio
375 expedida por el egistrador de la Propiedad en veinte y tres de
Febrero de mil ochocientos noventa y cuatro, comprensiva de varias
inscripciones, una de posesión á favor de Don Rafael Gómez Díaz,
de diez y ocho cuerdas de terreno á café, guineos y malezas en el ba-
rrio de Rubias, jurisdicción de Yauco, adquiridas por compra á Don
Santiago Chiaramonti el once de Enero de mil ochocientos ochenta
y cinco: la segunda inscripción de esa finca á favor de Don Domin-
go y Don Francisco Pietri y Pietri por compra á Gómez Díaz, y la

anotación preventiva sobre la misma finca con motivo del presente juicio: otra inscripción de posesión en seis de Diciembre de mil ochocientos noventa á favor de Don Rafael Gómez Díaz de veinte y cinco cuerdas de terreno en el barrio de Rubias, término de Yauco, á café, plátanos y pastos, adquiridas hacía más de diez años por compra privada á Anastasio Cruz: otra inscripción de posesión á favor del mismo Gómez Díaz, de treinta y dos cuerdas y un cuadro de terreno á café, plátanos y pastos en el barrio de Rubias, jurisdicción de Yauco, que había adquirido hacía más de diez años, veinte y cinco cuerdas, un cuadro, por compra á María Rosario y Pérez y las siete restantes á Don Andrés Avilés y Ramírez: la inscripción segunda de esa finca á favor de Don Domingo y Don Francisco Pietri en virtud de compra á Gómez Díaz, por escritura á veinte y tres de Diciembre de mil ochocientos noventa, y la anotación preventiva tomada sobre esa finca de la presente demanda: el testimonio fólio 386, de la escritura otorgada en Yauco á veinte y tres de Diciembre de mil ochocientos noventa, por Don Rafael Gómez Díaz, sobre venta á favor de Don Domingo y Don Francisco Pietri y Pietri, de las fincas rústicas á que se refieren las anteriores inscripciones, cuyo título aparece inscrito en cuatro de Mayo de mil ochocientos noventa y uno: el testimonio, fólio 393, de la escritura otorgada en Yauco á trece de Enero de mil ochocientos ochenta y ocho, por Don Rafael Gómez Díaz, sobre venta á favor de Don Francisco Lluch Negroni de veinte cuerdas más ó menos de terreno á pastos y algunas manchas de café y guineos en el barrio de Rubias, jurisdicción de Yauco, que había adquirido por compra á José Gregorio Ramos en escrituras de veinte y siete de Octubre de mil ochocientos ochenta y uno y ocho de Julio de mil ochocientos ochenta y dos, verificando la venta por mil pesos recibidos y fué inscrita en el Registro de la Propiedad en cuatro de Mayo de mil ochocientos noventa y uno: el testimonio, fólio 397, de la escritura otorgada en Yauco en veinte y dos de Diciembre de mil ochocientos noventa, por Don Francisco Lluch Negroni, sobre venta de las indicadas veinte cuerdas de terreno á Don Domingo y Don Francisco Pietri y Pietri, por la cantidad de mil pesos recibidos, cuyo título fué inscrito en cuatro de Mayo de mil ochocientos noventa y uno: la certificación fólio 402 vto., expedida por el Registrador de la Propiedad en trece de Enero de mil ochocientos ochenta y ocho, comprensiva de las inscripciones, una á favor de Don Francisco Lluch Negroni, de las veinte cuerdas compradas á Don Rafael Gómez Díaz, otra de ese mismo terreno á favor de Don Domingo y Don Francisco Pietri

y Pietri por compra á Lluch Negroni, y la anotación preventiva
tomada sobre esa finca con motivo de la presente demanda: una
certificación fólio 406 expedida por la Alcaldía de Yauco en veinte
y cinco de Febrero de mil ochocientos noventa y cuatro, relativa á
que Felipe Ayala contribuyó por la riqueza agrícola en mil ocho-
cientos treinta y cuatro sin determinación de cuota ni cantidad
de terreno, en mil ochocientos treinta y cinco, con un real y cuatro
maravedises, en mil ochocientos treinta y siete con dos reales, en
mil ochocientos treinta y ocho con veinte y cuatro cuerdas de te-
rreno, en mil ochocientos treinta y nueve con veinte y seis cuer-
das, en mil ochocientos cuarenta con veinte y seis y media cuerdas, en
mil ochocientos cuarenta y uno con ciento veinte y cinco cuerdas, en mil
ochocientos cuarenta y dos con dos pesos cincuenta centavos, en
mil ochocientos cuarenta y tres y mil ochocientos cuarenta y cua-
tro con ciento cuarenta cuerdas, en mil ochocientos cuarenta y cin-
co y mil ochocientos cuarenta y seis con doscientas cuerdas, en mil
ochocientos cuarenta y siete con doscientas doce cuerdas, en mil
ochocientos cuarenta y ocho con doscientas setenta y dos cuerdas,
en mil ochocientos cuarenta y nueve, cincuenta y cincuenta y uno,
con trescientos cuarenta y nueve cuerdas, en mil ochocientos cin-
cuenta y dos con ciento sesenta y seis cuerdas, en mil ochocientos
cincuenta y tres con tres pesos, en mil ochocientos cincuenta y cua-
tro con doscientas sesenta cuerdas, en mil ochocientos cincuenta y
cinco con trescientas setenta y nueve cuerdas, en mil ochocientos
cincuenta y seis con cuatrocientas cuerdas, en mil ochocientos cin-
cuenta y nueve con tres pesos quince centavos, en mil ochocientos
sesenta y uno con once pesos tres centavos, todo en el barrio de
Vegas, continuando en el de Rubias, en mil ochocientos sesenta y
dos con seis pesos veinte y cinco centavos, en mil ochocientos se-
senta y tres con dos pesos veinte centavos; en mil ochocientos se-
senta y cuatro ó sesenta y cinco con seis pesos veinte y cinco cen-
tavos, en mil ochocientos sesenta y cinco á sesenta y seis con tres
escudos seiscientas cuarenta milésimas, en mil ochocientos sesenta
y seis á sesenta y siete con catorce escudos ciento treinta y siete milési-
mas: otra certificación, fólio 407, expedida por la propia Alcaldía de
Yauco en veinte y cinco de Enero de mil ochocientos noventa y
cuatro, relativa á que Rufino Ramos contribuyó por riqueza agrí-
la en el barrio de Vegas hasta mil ochocientos sesenta y uno, y en
el barrio de Rubias, en mil ochocientos cincuenta y seis con sesenta
y ocho cuerdas, en mil ochocientos cincuenta y siete con cuarenta
y seis cuerdas, en mil ochocientos cincuenta y ocho con noventa

y dos cuerdas, en mil ochocientos cincuenta y nueve con cuatro pesos veinte centavos, en mil ochocientos sesenta con noventa cuerdas, en mil ochocientos sesenta y uno, con trece pesos cuarenta y siete cuerdas, digo centavos, en mil ochocientos sesenta y dos con quince pesos sesenta y dos centavos, en mil ochocientos sesenta y tres con cinco pesos cincuenta y seis centavos, en mil ochocientos sesenta y cuatro á sesenta y cinco con veinte y un pesos ochenta y siete centavos, en mil ochocientos sesenta y cinco á sesenta y seis con veinte y dos escudos ochocientas sesenta milésimas, en mil ochocientos sesenta y seis á sesenta y siete con cincuenta y un escudos ochocientas ochenta y cuatro milésimas, y mil ochocientos sesenta y nueve á setenta con ocho escudos: otra certificación, fólio 408, expedida por la propia Alcaldía de Yauco en veinte y cinco de Febrero de mil ochocientos noventa y cuatro, relativa á que Anastasio Cruz contribuyó por riqueza agrícola en el barrio de Rubias, mil ochocientos sesenta y cuatro á sesenta y cinco con un peso ochenta y siete centavos, mil ochocientos sesenta y cinco á sesenta y seis con un escudo seiscientas sesenta milésimas, mil ochocientos sesenta y seis á sesenta y siete con dos escudos ciento veinte milésimas, en mil ochocientos sesenta y nueve á setenta con ochenta milésimas de escudo y con quince pesetas mil ochocientos setenta y cinco á setenta y seis: otra certificación, fólio 409, librada por la citada Alcaldía de Yauco en veinte y cinco de Febrero de mil ochocientos noventa y cuatro, relativa á que Antonio Ramos contribuyó por riqueza agrícola en el barrio de Rubias, mil ochocientos sesenta y seis á sesenta y siete con dos escudos ciento veinte milésimas, en mil ochocientos sesenta y nueve á setenta con cincuenta milésimas de escudo y mil ochocientos setenta y seis á setenta y siete con un peso dos centavos; otra certificación de la propia Alcaldía y fecha, fólio 410, relativa á que Juan Bautista Montaggioni contribuyó con dos escudos por riqueza agrícola en el barrio de Rubias en el reparto de mil ochocientos sesenta y nueve á setenta: otra certificación, fólio 411, librada por la Alcaldía de Yauco en la referida fecha creditiva de que Juan Cedeño figuró en el barrio de Rubias por riqueza agrícola con cuarenta y nueve pesos veinte centavos en mil ochocientos setenta y seis á setenta y siete, con descientos veinte y seis pesos sesenta centavos en mil ochocientos setenta y siete á setenta y ocho con cuarenta y dos pesos en setenta y nueve á ochenta, con siete pesos cincuenta centavos en ochenta á ochenta y uno, con diez pesos en ochenta y uno á ochenta y dos, y con doce pesos en mil ochocientos ochenta y dos á ochenta y tres y ochenta y tres á ochenta y cuatro:

otra certificación de la misma Alcaldía y fecha, fólio 412, creditiva de que Dionisio Avilés aparece en el barrio de Rubias por riqueza agrícola con cinco cuerdas de tierra, en mil ochocientos cuarenta y uno y con cuatro pesos noventa centavos en mil ochocientos sesenta y uno: otra certificación de la citada Alcaldía y propia fecha fólio 413, creditiva de que Ramón Camacho figura contribuyendo en el barrio de Rubias por riqueza agrícola con dos pesos en mil ochocientos ochenta y dos á ochenta y tres, y con tres pesos en mil ochocientos ochenta y tres á ochenta y cuatro: otra certificación, fólio 414, librada por la Alcaldía de Yauco, en la referida fecha de veinte y cinco de Febrero de mil ochocientos noventa y cuatro, creditiva de que Manuel Olivieri aparece en mil ochocientos sesenta y seis á sesenta y siete con trece escudos seiscientas cincuenta milésimas por agrícola en el barrio de Naranjo: otra certificación de la misma Alcaldía y fecha y fólio 415, relativa á que Eugenio Rodríguez contribuyó en el barrio de Rubias por riqueza agrícola con setenta y cinco pesetas en mil ochocientos setenta y cinco á setenta y seis, y con ochenta y seis pesos setenta y cinco centavos en mil ochocientos ochenta y dos á ochenta y tres: otra certificación de la citada Alcaldía y fecha, folio 416, creditiva de que Gregorio Santiago figura en el barrio de Rubias por riqueza agrícola contribuyendo con quince pesetas en mil ochocientos setenta y cinco á setenta y seis, con dos pesos veinte centavos en mil ochocientos setenta y seis á setenta y siete, con diez pesos en mil ochocientos setenta y siete á setenta y ocho, con dos pesos sesenta centavos en mil ochocientos setenta y nueve á ochenta, con dos pesos en mil ochocientos ochenta á ochenta y uno, con tres pesos en mil ochocientos ochenta y uno á ochenta y dos, con cuatro pesos en mil ochocientos ochenta y dos á ochenta y tres, y en mil ochocientos ochenta y tres á ochenta y cuatro y con cinco pesos en mil ochocientos ochenta y cinco á ochenta y seis: otra certificación de la misma Alcaldía y fecha y fólio 417, relativa á que Santiago Ruíz contribuye por riqueza agrícola en el barrio de Vegas, con un peso en mil ochocientos cincuenta y tres, con sesenta cuerdas en mil ochocientos cincuenta y cinco, con cincuenta y dos cuerdas en mil ochocientos cincuenta y seis, con veinte y cinco centavos en cincuenta y siete, con cincuenta y ocho cuerdas en mil ochocientos cincuenta y ocho, con un peso cincuenta y siete centavos en mil ochocientos cincuenta y nueve, con cuarenta y cuatro cuerdas en mil ochocientos sesenta, con dos pesos cuarenta y cinco centavos en mil ochocientos sesenta y uno, y en el barrio de Rubias con dos pesos cincuenta cen-

tavos en mil ochocientos sesenta y dos, con ochenta y ocho centavos en mil ochocientos sesenta y tres, con dos pesos cincuenta centavos en mil ochocientos sesenta y cuatro á sesenta y cinco, con dos escudos setecientas cuarenta milésimas en mil ochocientos sesenta y cinco á sesenta y seis, con siete escudos sesenta y ocho milésimas en mil ochocientos sesenta y seis á sesenta y siete y con ochenta milésimas en mil ochocientos sesenta y nueve á setenta: otra certificación de la propia Alcaldía é indicada fecha, fólio 118, creditiva de que Rafael Gómez figura contribuyendo por riqueza agrícola en el barrio de Rubias con tres escudos en mil ochocientos sesenta y nueve á setenta, con setenta y cinco pesetas en mil ochocientos setenta y cinco á setenta y seis con diez y ocho pesos cuarenta y cinco centavos en mil ochocientos setenta y seis á setenta y siete, con ochenta y cinco pesetas en mil ochocientos setenta y siete á setenta y ocho, con quince pesos setenta y cinco centavos en mil ochocientos setenta y nueve á ochenta, con diez pesos en mil ochocientos ochenta á ochenta y uno, con diez y siete pesos en mil ochocientos ochenta y dos á ochenta y tres, con doce pesos cincuenta centavos en mil ochocientos ochenta y tres á ochenta y cuatro, con quince pesos en mil ochocientos ochenta y cinco á ochenta y seis, con veinte y cinco pesos en mil ochocientos ochenta y seis á ochenta y siete, con veinte y siete pesos cincuenta centavos en mil ochocientos ochenta y siete á ochenta y ocho, con veinte y cinco pesos en mil ochocientos ochenta y ocho á ochenta y nueve, con veinte y ocho pesos en mil ochocientos ochenta y nueve á noventa y con treinta y cinco pesos en mil ochocientos noventa á noventa y uno: otra certificación de la misma fecha expedida por la antedicha Alcaldía, fólio 419, creditiva de que Sebastián Ramos contribuye por riqueza agrícola en el barrio de Vegas con ciento veinte y cinco cuerdas en mil ochocientos cuarenta y cuatro, con cincuenta cuerdas en mil ochocientos cuarenta y cinco y cuarenta y seis, con cien cuerdas en mil ochocientos cuarenta y siete, con cincuenta cuerdas en mil ochocientos cuarenta y ocho y con treinta cuerdas en mil ochocientos cuarenta y nueve: otra certificación de la propia Alcaldía y fecha, fólio 420, creditiva de que María Martina Rosario contribuyó por riqueza agrícola en el barrio de Vegas hasta mil ochocientos sesenta y uno y en el de Rubias en mil ochocientos cincuenta y nueve con dos pesos diez centavos, en mil ochocientos sesenta con veinte cuerdas de terrenos, en mil ochocientos sesenta y tres con tres pesos sesenta y ocho centavos, en mil ochocientos sesenta y dos con dos pesos cincuenta centavos, en mil ochocientos sesenta y tres con ochenta y ocho centavos, en mil

ochocientos sesenta y cinco á sesenta y seis con dos escudos cuatrocientas ochenta milésimas, y en mil ochocientos sesenta y seis á sesenta y siete con dos escudos ochocientas veinte y siete milésimas: otra certificación de la misma Alcaldía y fecha, fólio 421, creditiva de que Domingo Pietri y hermano á Pietri hermanos, desde el año mil ochocientos setenta y cinco hasta el noventa y cuatro aparecen pagando contribuciones por territorial en el barrio de Rubias con seiscientas cuarenta y cinco pesetas en mil ochocientos setenta y cinco á setenta y seis, con ciento ochenta y siete pesos cincuenta centavos, en mil ochocientos ochenta y uno á ochenta y dos en el propio barrio, con doscientos setenta y seis pesos cincuenta centavos por mil ochocientos ochenta y dos á ochenta y tres, doscientos setenta y cinco pesos, en mil ochocientos ochenta y tres á ochenta y cuatro, doscientos cuarenta pesos, en mil ochocientos ochenta y cinco á ochenta y seis, doscientos veinte y siete pesos cincuenta centavos, en mil ochocientos ochenta y seis á ochenta y siete, doscientos sesenta y dos pesos cincuenta centavos, en mil ochocientos ochenta y siete á ochenta y ocho, doscientos ochenta pesos, en mil ochocientos ochenta y ocho á ochenta y nueve, ciento ochenta y cinco pesos, en mil ochocientos ochenta y nueve á noventa, doscientos pesos en mil ochocientos noventa á noventa y uno, trescientos setenta y cinco pesos, en mil ochocientos noventa y uno á noventa y dos, noventa y dos á noventa y tres y noventa y tres á noventa y cuatro, y por último, la certificación fólio 422 vto., expedida por el egistrador de la Propiedad en vinte y dos de Febrero de mil ochocientos noventa y cuatro, comprensiva de la inscripción de las cuatro caballerías del terreno á favor de los demandantes.

9o.—*Resultando*: que el otro demandado Don Francisco Cedeño y Ayala contesta la demanda, fólio 556, solicitando que se le absuelva de ella con imposición de costas á la parte actora, fundándose en que las veinte y dos cuerdas y media de terreno que reclaman las demandantes no están comprendidas ni enclavadas en la finca de éste, pues las adquirió en mil ochocientos ochenta y siete por compra á sus legítimos dueños y poseedores Juan Cedeño, Asunción Montes, Don José Ramón Vega, Monserrate Ayala é Isidro Cruz, en distintas porciones y por carecer de título escrito, formalizó informativo posesorio que inscribió en el Registro, vendiéndolas luego á Don Domingo Pietri por escritura á siete de Junio de mi ochocientos noventa y tres, que también fué inscrita en el Registro.

10o.—*Resultando*: que los otros demandados Don Pedro Angel

Agostini y Don Vicente Limarola, por medio de su Procurador, fólio 613, contestan también la demanda, solicitando la absolución y condena de costas á la parte actora, porque ésta tendría que justificar que los terrenos de Agostini son los mismos que están enclavados en las cuatro caballerías de que hizo concesión el Estado al Señor Pinatell, y aún suponiendo que fueran parte de esos terrenos no podría ejercitarse la acción reivindicatoria por haber prescrito, pues en todo caso los actuales poseedores adquirieron con justo título y buena fé, fundándose y alegando que por escritura en esta Ciudad á cuatro de Septiembre de mil ochocientos ochenta y dos, los hermanos Don Luis Felipe, Don Alejandro y Don Pablo Simón Fraticelli y Pietri, que constituía la sociedad Fraticelli Hermanos vendieron á Don Vicente Limarola y Benigni la hacienda cafetal Gloria, de doscientas sesenta cuerdas que reportaba dos gravámenes, uno, de seis mil quinientos pesos á favor de Don Mariano Bartolomey, proveniente del precio de ochenta cuerdas de terreno de dicha finca, y otro, de cuatro mil pesos á favor de Doña Ana Emilia Fraticelli, procedente de acciones de condominio en esa finca, constituyendo Limarola con posterioridad otra hipoteca á favor de Agostini por diez y ocho mil cuatrocientos pesos ochenta y nueve centavos: que por otra escritura de cinco de Marzo de mil ochocientos noventa, Limarola adjudicó en pago á Agostini la citada hacienda, inscribiéndola en el Registro, satisfaciendo Agostini las primeras hipotecas, según carta de pago de veinte y seis de Febrero de mil ochocientos noventa y uno, que se inscribió en el Registro; que esa finca la posee Agostini con legítimo título y buena fé, no formando parte de las ochocientas cuerdas que concedió el Estado en mil ochocientos treinta y cuatro á Don Fernando María Pinatell, sino de las que se incautó el Estado y que figuran á la parte Norte de las concedidas á Pinatell, según plano que acompaña: que no puede justificarse que los terrenos que se trata de reivindicar los posee Agostini, pues han resultado inútiles todas las operaciones de reconocimiento y deslinde que é este efecto se han practicado por personal técnico facultativo; que Limarola vino poseyendo las doscientas sesenta cuerdas quieta y pacíficamente desde mil ochocientos ochenta y dos hasta mil ochocientos noventa, en que las vendió á Agostini, continuando éste en la posesión que data de más de diez años sin contar el tiempo que poseyeron esos terrenos los señores Fraticelli Hermanos: que estando dicha hacienda Gloria inscrita con anterioridad en el Registro, si formara parte de las ochocientas cuerdas que se concedieron á Pinatell, no hubieran podido ni debido inscribirse

éstas con posterioridad ó sea en Septiembre de mil ochocientos no-venta y en virtud de título distinto, y que la variación de colindantes hecha en el Registro á (virtud) solicitud de la Sucesión Verges no puede perjudicar á nadie.

11o.—*Resultando*: que esos demandados al contestar la demanda, acompañan como documentos justificativos de su derecho, certifi-caciones, fólios 564 y siguientes, expedidas por el Ayudante segundo de Montes, con vista del expediente sobre incautación y venta á los señores Don Domingo Pietri, Don Pablo Simón Fraticelli y Don Pedro Mateo Fellinch, de unos terrenos del barrio de Rubias, sitio de las Aceitunas, jurisdicción de Yauco, sobre los que pretendía te-ner derecho Don Celestino Arizmendi é incidente á que dió lugar el cumplimiento de la sentencia recaída en el pleito contencioso-ad-ministrativo que contra la referida incautación hecha á nombre del Estado promovió Don Pedro Lázaro Verges, en que se inserta la minuta de un informe de la inspección de Montes de que debe des-estimarse una queja de Don Pedro Gabriel Carreras, como apo-derado de la viuda de Verges, sobre la manera en que vá á hacerse el deslinde de los terrenos concedidos á Pinatell, y que practicado ese deslinde y plano levantado, se deduce de ellos que estando los terrenos á que el título se refiere al Este del Río y de la quebrada de los Almendares, y encontrándose al Norte de éste los vendidos por el Estado, no pueden en manera alguna ser éstos parte de los que al título corresponden: se insertaba asimismo el acta levanta-da en siete de Diciembre de mil ochocientos ochenta y cinco por el Ingeniero Jefe de Montes y Don Lorenzo S. de Vizcarrondo, perito nombrado por la Sucesión Verges, con asistencia de Don Gabriel Carreras, apoderado de esa sucesión, sobre el reconocimiento de los terrenos concedidos á Pinatell para levantar el oportuno plano, fijándose varios puntos, y haciéndose constar que varios de la con-cesión habían desaparecido y por último, se inserta la comunicación del Presidente del Consejo contencioso-administrativo, en que se desestima la solicitud de Doña Estevelina Remond de Verges, de que se le pusiera en posesión de los terrenos: un plano que ocupaba el fólio 578, de donde se desglosó, relativo á los terrenos de que se incautó el Estado en el barrio de las Rubias y del de la concesión de ochocientas cuerdas de terreno baldíos en el barrio de las Vegas, hecho á Don Fernando María Pinatell, copia simple, fólio 580 de la escritura otorgada en San Germán á cuatro de Septiembre de mil ochocientos ochenta y dos por la sociedad Fraticelli Hermanos, sobre

venta á favor de Don Vicente Limarola de la Hacienda Gloria, con los gravámenes á que se refiere el demandado Agostini en la contestación, y las copias fólios 590 y siguientes de las escrituras de adjudicación en pago por Limarola á Don Angel Pedro Agostini, de la citada hacienda, y cartas de pago y cancelaciones de las hipotecas que reportaba esa finca, inscritas en el Registro.

12o.—*Resultando*: que el demandado Don Francisco Lluch Negroni renunció la citación de evicción que hiciera á Don Rafael Gómez Díaz y contesta á la demanda, fólios 674, solicitando se le absuelva de la demanda y se declare la nulidad de la inscripción de la finca de los Señores Verges, fundándose en que adquirió la finca que se reclama por compra á Don Rafael Gómez Díaz, por escritura en Yauco á trece de Enero de mil ochocientos ochenta y ocho, inscrita en el Registro, habiéndola adquirido Gómez de Don José Gregorio Ramos por escritura de veinte y siete de Octubre de mil ochocientos ochenta y uno y ocho de Julio de mil ochocientos ochenta y dos y Ramos hizo igual adquisición de Don Santiago Vivaldi, por escritura á diez y seis de Abril de mil ochocientos ochenta: que tanto Lluch Negroni, como sus antiguos dueños, han venido poseyendo y ejercitando sus derechos dominicales sobre la referida finca pacífica y públicamente á título de dueños, pagando las contribuciones del Estado y Municipio que se le repartían, sin que hasta ahora, y hace el espacio de catorce años, se le haya inquietado en el ejercicio de sus derechos dominicales: que Lluch Negroni ha dispuesto legítimamente del inmueble al trasmitirlo en venta á Don Domingo y Don Francisco Pietri, en escritura de veinte de Diciembre de mil ochocientos noventa: que el derecho de Lluch Negroni y sus causantes, se han convalidado por el transcurso del tiempo para la prescripción porque han disfrutado del concepto de dueños pública y pacíficamente con buena fé y justo título: que las demandantes deben probar que las tierras que reclaman son las mismas inscritas á nombre de Lluch Negroni: que al inscribir las Sras. Verges su título en el Registro, claramente se desprende que han de referirse á otras tierras distintas á las que se inscribieron á nombre de Lluch Negroni, pues de otro modo no pudieron ser inscritas, y que dichas demandantes han presentado su reclamación sobre las tierras referidas once años después de tener fuerza de ley la sentencia del Consejo de Estado.

13o.—*Resultando*: que el demandado Lluch Negroni al contestar la demanda acompaña la copia simple, folio 659, de la escritura otor-

gada en Yauco en diez y seis de Abril de mil ochocientos ochenta
por Don Santiago Vivaldi, sobre venta á favor de Don José Gre-
gorio Ramos de veinte cuerdas de terreno, á café, plátanos y pastos
en el barrio de Rubias, jurisdicción de Yauco, que había adquirido
por compra á Juan Lázaro Figueroa en escritura á trece de Sep-
tiembre de mil ochocientos setenta y nueve, cuya venta se verificó
por seiscientos pesos recibidos: otra copia simple, fólio 661, de la
escritura otorgada en Yauco á veinte y siete de Octubre de mil
ochocientos ochenta y uno, por Don José Gregorio Ramos sobre
venta á favor de Don Rafael Gómez Díaz, de diez cuerdas
de terreno que forma parte de las veinte adquiridas de Vi-
valdi, verificando la venta por cuatrocientos pesos recibidos: otra
copia simple, fólio 663, de la escritura otorgada en Yauco á ocho de
Julio de mil ochocientos ochenta y dos por José Gregorio Ramos,
sobre venta á favor de Don Rafael Gómez Díaz de las diez cuerdas res-
tantes de veinte que adquirió de Vivaldi, verificando la venta por
seiscientos pesos recibidos: otra copia simple, fólio 665, de la escri-
tura otorgada en Yauco á trece de Enero de mil ochocientos ochen-
ta y ocho por Don Rafael Gómez Díaz, sobre venta á Don Francisco
Lluch Negroni de las indicadas veinte cuerdas de terreno por pre-
cio de mil pesos recibidos: y copia simple, fólio 668, del auto dictado
por el Juzgado de Ponce en veinte y dos de Junio de mil ochocientos
cincuenta y ocho, confirmado por la audiencia en veinte y tres de
Marzo de mil ochocientos cincuenta y nueve, declarando sin lugar
la demanda por Don Pedro Mompesart contra Felipe Ayala, sobre
que desampare la estancia de las Vegas que tenía á partir utilidades,
rindiendo cuentas con pago de sus productos.

140.—*Resultando*: que el demandado Don Domingo Pietri tam-
bién renunció la citación de evicción que hiciera al Estado en cuan-
to á cincuenta y ocho cuerdas de terreno que le vendiera y contesta
la demanda, fólio 714, solicitando se le absuelva de ella y se con-
dene en costas al actor, fundándose en que por escritura en esta
Ciudad á trece de Octubre de mil ochocientos setenta y siete y pre-
vio el oportuno expediente y formalidades legales, le fué trasmitida
en nombre del Estado y á título oneroso á Don Domingo y Don
Francisco Pietri, la propiedad de cincuenta y ocho cuerdas de te-
rreno en el barrio de Rubias, sitio de las Aceitunas, término de
Yauco, que, según deslinde y mensura practicados por el Inspec-
tor de Montes, resultaron baldías y propias del Estado, verificán-
dose la venta por cuatro mil novecientos sesenta y cuatro pesetas

treinta y seis céntimos, satisfecha parte de contado y parte á plazos: que por no hallarse inscrito el terreno á nombre del Estado, Pietri inscribió la posesión, agrupándolo á otras suertes de tierra, en veinte y seis de Julio de mil ochocientos ochenta y seis: que en la demanda se ha comprendido ese terreno, y que habiendo acudido en mil ochocientos ochenta y cinco la Sucesión Vergés á la Intendencia General de Hacienda en reclamación de los terrenos que hoy demandan, se acordó que la Inspección de Montes levantara el plano correspondiente, como se verificó comprobándose perfectamente que las cincuenta y ocho cuerdas de terreno vendidas por el Estado á los Señores Pietri, no se hallaban comprendidas dentro del perímetro de las cuatro caballerías mercedadas en mil ochocientos treinta y cuatro á Don Fernando María Pinatell.

15.—*Resultando*: que con la anterior contestación se acompaña el plano, fólio 693, de los terrenos del barrio de Rubias á que se refiere el informe del Consejo Contencioso de diez de Julio de mil ochocientos ochenta y cinco, emitido á reclamación formulada por Da. Estevelina Remond, viuda de Don Pedro L. Verges, cuyo plano aparece suscrito en copia por Don Pedro Tolosa: y copias simples, fólios 695 y siguientes de las certificaciones expedidas por el Ayudante segundo de Montes, que ya tenía acompañada el otro demandado Don Angel Pedro Agostini, fólio 564 y siguientes.

16.—*Resultando*: que conferido traslado para réplica á la parte actora, lo evacua, fólio 732, solicitando se desestimen las excepciones de la contraria y se declare sin lugar la reconvención, cancelándose la anotación preventiva que de ésta se ha tomado en el Registro, sentando como hechos definitivos los de la demanda, y ampliándolos con otros que se deducen de las contestaciones de los demandados y en su virtud consigna, que del título de concesión se tomó razón al fólio 15 vto., bajo el número diez y siete del libro de títulos de terrenos en las reales oficinas de esta Isla: que la concesión se hizo con la condición indispensable, bajo pena de revocación de la gracia y reversión de los terrenos al estado, de que en dos años había de hacerlos fructíferos y de que abonaría los derechos prevenidos por la real cédula de catorce de Enero de mil ochocientos setenta y ocho, ordenándose que se le pusiera en posesión: que, según la historia que el mismo Pinatell hace en la hoja que se acompaña, el diez y seis de Diciembre de mil ochocientos treinta y cuatro, se le posesionó del inmueble; del que dijo tenía figura

cuadrilonga, cerrada por el Este y Norte, por las cuchillas denominadas Carrizales y Aceitunas, por el Oeste, el río Chiquito y por el
Sud, el colindante Don Diego Torres: que en esa misma hoja hace
constar Pinatell que en veinte y uno de Mayo de mil ochocientos
cuarenta y uno, el Comisionado teniente á Guerra Don Juan
Troche, con actuarios y un agrimensor montero aficionado, se constituyeron en el barrio de las Vegas, lugar de río Chiquito, para la
mensura del terreno mercedado, que se verificó: Puesto el montero
en tierras de Torres, Don Diego, dejó á mano derecha un guaraguao
que señaló con una cruz, y quedando lo de Pinatell al Norte, fué descendiendo al río y remontando éste llegó á la boca de una quebrada
nombrada de los Almendrones, haciendo constar que había medido
cuarenta cuerdas.    Remontando dicho río, dejó la concesión de
Pinatell á su derecha, "Este" hasta llegar á un algarrobo, en el
camino y cuchilla de las Aceitunas, el que entalló de cruces, dando
cuenta de haber medido veinte cuerdas.    Siguió dicho camino, y
pasando arriba la cuchilla nombrada de los Carrizales, llegó á un
hoyo que fué abierto la primera vez por los agregados Pagán, González, Cruz y otros, dejando constancia de haberse medido cuarenta
cuerdas.    De este punto, dejando la concesión á la derecha Oeste,
llegó hasta la cuchilla guayabal y así bajando hasta el punto en
donde se empezó, se hicieron constar, como medida justa, veinte cuerdas al mismo guaraguao de la colindancia Torres: que esa descripción conviene con la que se hace en el título de concesión y se
ajusta al plano que se acompaña: que Pinatell, desde que fué puesto en posesión de las tierras, las puso en cultivo, entregándoselas á
aparceros y abonó con exactitud los derechos de tierra mientras las
tuvo en su poder, ó sea desde los años mil ochocientos treinta y cuatro á mil ochocientos cincuenta y tres: que en la escritura de venta
de Pinatell á Gallart se hizo constar que el terreno estaba plantado
y abierto: que Gallart entró inmediatamente en posesión del inmueble, se dió de alta en el pago de las contribuciones que satisfizo
hasta el treinta y uno de Mayo de mil ochocientos cincuenta y cuatro en que vendió los terrenos á Don Juan Aubert, el que se dió
de alta en dichas contribuciones y pagó mientras poseyó la finca:
que en treinta de Marzo de mil ochocientos cincuenta y cinco, el
agrimensor Don Pedro L. Verges, á instancia de Aubert y por comisión del Juez de Primera Instancia, deslindó la finca con la conformidad de colindantes, levantando el plano que se acompaña, el
cual conviene exactamente en su figura, en su perímetro, en las colindancias, que por ser naturales, no podían variar, y en la posi-

ción geográfica del terreno á que ambos se refieren con el levantado en mil ochocientos cuarenta y uno por el Señor Pinatell, y de cuyo plano se tomaron los puntos y linderos al enagenarse la finca por Aubert á Mompesart: que éste falleció á fines con posterioridad de mil ochocientos cincuenta y ocho. y no en mil ochocientos cincuenta y siete, como equivocadamente se consigna en la partida de defunción, pues se le hicieron citaciones judiciales en veinte de Agosto de mil ochocientos cincuenta y ocho: que Mompesart tomó posesión de la finca en primero de Julio de mil ochocientos cincuenta y siete, y se dió de alta en el pago de contribuciones que satisfizo y habiendo dado á Felipe Ayala un pedazo de terreno para que, como aparcero, hiciera compras, digo siembras, á partir utilidades allá por los años mil ochocientos cincuenta y siete á mil ochocientos cincuenta y ocho, viendo que Ayala no le daba ningunas y que, al exigírselas, alegó ser dueño de la finca, promovióle un litis con el fin de que le desocupase el inmueble y le rindiese cuenta de sus productos, en cuyo litis recayó sentencia, declarándose sin lugar la demanda con las costas al demandante, mandando alzarse los entredichos de bienes que se hicieron al demandado, cuya sentencia fué apelada y se confirmó en veinte y tres de Mayo de mil ochocientos cincuenta y nueve, pero contra ella se interpuso casación, sin que se sepa el resultado: que durante el litis con Mompesart se entredicharon á Felipe Ayala las tierras que éste reclamaba como suyas, y si bien se mandaron alzar los entredichos, no hay constancia alguna de que les fueran entregadas con posterioridad esas tierras, demostrando lo contrario el que Ayala, en primero de Agosto de mil ochocientos cincuenta y ocho, solicitó del Juzgado se le declarase pobre para continuar el litigio, alegando que carecía de bienes de fortuna, pues lo poco que tenía se le había entredichado, como así lo declararon dos testigos y aparecía de las certificaciones libradas por el Alcalde y Síndico del pueblo de Yauco: que muerto Mompesart y entrando á poseer Verges las ochocientas cuerdas litigiosas y á pagar por ellas las contribuciones, acudieron al Gobierno General, en mil ochocientos sesenta, Don Felipe Ayala y Don Silvestre Fraticelli, pretendiendo cuatrocientas cuerdas de las mercedadas á Pinatell, por considerarlas revertidas al Estado, mediante no haberse cumplido las condiciones de cultivo que se impusieron al hacer la concesión, y formado expediente, se opuso Don Pedro Lázaro Vergés, y oído el informe del Ayuntamiento de Yauco, de que los terrenos eran efectivamente concedidos á Pinatell, que estaban en su mayor parte cultivados por indivíduos que allí vivían hacía más de quince

años, y que en los incultos no se habían hecho otros trabajos que algunos de poca importancia por los encargados de Mompesart, declaró la Junta de baldíos sin lugar las pretensiones de Ayala y Fraticelli: que contra el Decreto del Gobierno General de cinco de Octubre de mil ochocientos setenta y seis, ordenando que el Estado se incautara de los terrenos objeto de esta reclamación, siguió Verges el pleito ante el Consejo Contencioso-administrativo que declaró en definitiva con lugar las pretensiones de Verges, revocando el decreto de incautación por los fundamentos de haber justificado Verges ser causahabientes de Mompesart y no había precedido la calificación del hecho que se refería al cultivo de los terrenos, pues según informes del Ayuntamiento de Yauco y de la inspección de Montes, estaban sembrados de plátanos y café, pagando Verges las contribuciones durante el período de mil ochocientos cincuenta y cinco, y que si no se habían cultivado por el propio Verges, no era motivo para revocar la Real Cédula, puesto que los terrenos podían cultivarse por los concesionarios, valiéndose de terceras personas, cuya resolución del Consejo fué confirmada por Real Decreto, sentencia del Consejo de Estado de veinte de Febrero de mil ochocientos ochenta y dos, al cual se le puso el cúmplase en tres de Mayo del mismo año, publicándose para general conocimiento en la Gaceta de esta Isla, número sesenta y cuatro, de treinta del propio mes: que muerto Vergés, pidió su sucesión al Gobierno General que se le pusiese en posesión de los terrenos, y dispuesto la formación del cróquis, se constituyó en la finca el Ingeniero Guillermo con el otro Vizcarrondo, acompañados de Don Pedro Gabriel Carreras y, al describir las operaciones, sólo pudieron comprobar el punto de partida y la desembocadura de la quebrada de los Almendrones en el río Chiquito: que informando luego la inspección de Montes sobre tales particulares, se declararon sin lugar las pretensiones de la sucesión Verges, pero no conforme ésta, acude de nuevo al Gobierno, presentando el plano que levantara Verges en mil ochocientos cincuenta y cinco y entonces el Consejo Contencioso, por orden del Gobernador, informó que la cuestión de identidad del terreno no se había aclarado por haber desaparecido la mitad de los puntos que señalaban la concesión de Pinatell, y en virtud de ello fué denegada de nuevo la petición de los sucesores de Don Pedro Lázaro Vergés; que los Señores Don Domingo y Don Francisco Pietri están en posesión indebidamente de trescientas cuarenta cuerdas y de cincuenta más, que forman parte de la finca que trata de reivindicar, y después de haber hecho inscribirlas en virtud de expediente posesorio en

que afirman que carecía de título escrito, obtienen la inscripción de las escrituras que presentan sobre adquisición de los terrenos, de los cuales los antiguos vendedores no poseían títulos de propiedad: que las simulaciones de contratos que se alegan por el demandado Pietri no son ciertas, y deben presentarse pruebas para justificarlas: que no es cierto que Piñatell declarara que no había hecho cultivos en la finca, pues en la venta á Gallart manifestó que en el terreno existía desmontado y plantado: que la inscripción de posesión no perjudica en ningún caso al que tenga mejor derecho á la propiedad del inmueble y que en cuanto á la reconvención solicitada por Pietri, sólo es de omitirse si convienen en que sus tierras están contenidas en las que se reclaman en la presente demanda, pues en otro caso se resolverá cual de las inscripciones debe subsistir, y que el defecto de la inscripción á favor de la Viuda de Verges, es subsanable y sólo podría echarse abajo si se probara que Don Arturo Verges había dejado sus bienes á otro heredero de mejor derecho.

17o.—*Resultando:* que con el escrito de réplica se acompaña por la parte actora la certificación de deslinde, fólio 729, y plano, fólio 730, suscritas por Don J. M. Pinatell; y otro plano que se desglosó y ocupaba el fólio 731, levantado por Don Francisco Walls, como copia del que levantara el agrimensor Don Pedro L. Verges en Abril de mil ochocientos cincuenta y cinco, en virtud de comisión del Juzgado de Ponce y á petición de Don Juan Aubert, dueño de una estancia de café, plátanos y pastos en el lugar del Río Chiquito, parte del barrio de Vegas, territorio de Yauco, compuesto de ochocientas cinco cuerdas treinta y nueve céntimos.

18o.—*Resultando:* que á instancia de la parte actora se acordó que todos los demandados litigaran unidos y bajo una misma dirección.

19o.—*Resultando:* que conferido traslado para dúplica á los demandados, lo evacuaron, bajo una misma dirección, solicitando se resuelva el juicio, conforme lo solicitaron en los respectivos escritos de contestación á la demanda, alegando en cuanto á la defensa de Don Domingo Pietri, además de reproducir los hechos que tienen consignados, que del acta y plano levantados por el Ingeniero de Montes, en unión del otro Ingeniero Vizcarrondo y del representante de la sucesión Verges, resulta que de los cuatro puntos fijados en el título de la concesión Pinatell, sólo pudo comprobarse la existen-

cia de uno, por cuyo motivo fué imposible la identificación del terreno, y que los terrenos de que se incautó el Gobierno, á nombre del Estado, en mil ochocientos setenta y seis, que enagenó á Don Domingo y Don Francisco Pietri y otros, son terrenos distintos de los concedidos á Pinatell, porque estando los terrenos á que se refiere el título al Este del río y de la quebrada de los Almendrones y encontrándose al Norte de ésta los vendidos por el Estado no podían en manera alguna ser éstos parte de los que al título corresponden; que el Consejo contencioso dictaminó en veinte y siete de Mayo de mil ochocientos ochenta y seis que los documentos y planos nuevamente presentados por la sucesión Verges no decidían la cuestión de identidad, porque cualquiera que fuera su trascendencia sobre todos ellos, está el título de la primitiva concesión, en el que al señalarse los cuatro puntos del deslinde, parece natural que se hubieran citado las cuchillas de Aceitunas y Carrizales, si por acaso en ellas estuvieran los límites de la concesión Pinatell: que en cuanto á la defensa del demandado Cedeño y Ayala se reproducen los hechos del escrito de contestación; en cuanto á Agostini y Limarola, además de reproducirse tales hechos, se alega que si los autos del pleito de Ayala con Mompesart hubieran desaparecido, era procedente la averiguación sumaria del caso, y en lo que respecta á Lluch Negroni, también se reproducen los hechos de la contestación y se alega que la certificación librada por Don Fernando María Pinatell, es un documento privado sin los requisitos que exige la ley: que el plano levantado por un aficionado se encuentra en las mismas condiciones que aquella certificación: que el otro plano levantado por Don Pedro Lázaro Verges en mil ochocientos cincuenta y cinco fué ya calificado en la sentencia del pleito entre Ayala y Mompesart como obra exclusiva de su causante: que de la sentencia dictada por la Excma. Audiencia Territorial en el pleito entre Ayala y Mompesart, no se ha interpuesto recurso de casación: que la sentencia dictada por el Consejo de Estado es de índole administrativa y que en nada perjudica una cuestión esencialmente civil: que al pedir la Sucesión Verges el cumplimiento de esa sentencia, no ha podido efectuarse por quedar en pié la cuestión de identidad de las tierras, que los terrenos que denuncia el título de amparo de la concesión de Don Fernando María Pinatell no son los mismos que pertenecen á los demandados.

20o.—*Resultando:* que á solicitud de ambas partes se recibió el pleito á prueba y en los períodos correspondientes se propuso y practicó la que á cada parte convino á su derecho.

21o.—*Resultando:* de la prueba de la parte actora, que se trajo la certificación, fólio 1009, expedida por la Alcaldía de Yauco, creditiva de que Don Fernándo María Pinatell figuró· en los padrones de tierra con ochocientas cuerdas de tierra, satisfaciendo contribuciones de los mismos, durante los años de mil ochocientos treinta y ocho, mil ochocientos cuarenta y uno, mil ochocientos cuarenta y tres, mil ochocientos cuarenta y cuatro, mil. ochocientos cuarenta y siete, mil ochocientos cuarenta y nueve, mil ochocientos cincuenta, mil ochocientos cincuenta y uno, mil ochocientos cincuenta y dos y mil ochocientos cincuenta y cuatro, no figurando, bajo ningún concepto, Don Estéban Gallart: que Don Juan Aubert consta en el reparto de mil ochocientos cincuenta y cinco pagando contribuciones por ochocientas cuerdas de terreno : que Don Pedro Mompesart figura contribuyendo igualmente en los padrones de mil ochocientos cincuenta y seis, cincuenta y siete, cincuenta y ocho, cincuenta y nueve, sesenta y sesenta y uno, por idéntica cantidad de tierra y por último que Don Pedro Lázaro Verges resulta inscrito, contribuyendo también en los padrones de mil ochocientos sesenta y dos, mil ochocientos sesenta y tres y mil ochocientos sesenta y cinco, por ochocientas cuerdas de tierra; que se trajeron así mismo los siguientes documentos: la certificación, fólio 1072, expedida por el Oficial primero de la Administración Central de Contribuciones y Rentas é Interventor de dicho Centro, comprensiva de la segunda pieza del expediente sobre el terreno baldío del barrio de las Aceitunas, jurisdicción de Yauco, en que aparece Don Pedro Lázaro Verges demandando ante el Consejo Contencioso contra la resolución del Gobierno sobre reversión al Estado de terrenos baldíos, y pidiendo el Gobierno al Inspector de Montes los expedientes de Ayala y Fraticelli, un oficio del Juzgado de Ponce en causa sobre malversación de fondos, desfalco y defraudación de la Administración de Rentas y Aduana de Guayanilla, reclamando constancias de las cantidades correspondientes á depósitos verificados por Don Simón Fraticelli, Don Mariano Bartolomey, Don Domingo Pietri y Don Mateo Tolinch, por montes, y la contestación á ese oficio; otro oficio del Gobierno á la Inspección de Montes, participándole que en la Gaceta de veinte y cinco de Mayo de mil ochocientos ochenta y dos se publica el Real Decreto, sentencia del Consejo de Estado, relativo al recurso de alzada por Don Pedro Lázaro Verges contra la resolución del Gobierno que ordenó revertir al Estado unos terrenos del barrio de Vegas, jurisdicción de Yauco, que estaban en poder del mismo, para que procediera á dar cumplimiento á dicho Real Decreto, el cual luego se acompaña en copia á dicha

Inspección; el informe de ésta, relativo á que los terrenos de que se incautó el Estado en el barrio de Rubias, son completamente distintos de los concedidos á Pinatell en las Vegas, como se vería en el plano de autos, fólio 1092, y por consiguiente, resultaría un perjuicio para el Estado si se pusiera en posesión de ellos á Verges como pretende, pues en tal caso había necesidad de anular las escrituras de venta otorgadas por el Estado é indemnizarles el importe de la adquisición y los perjuicios que se les irrogarían; copia del acuerdo del Consejo Contencioso, mandando que la Inspección de Montes cumpla lo dispuesto en la sentencia, sin perjuicio de las reclamaciones que sobre la identidad del terreno pueda deducir la parte interesada: copia de la certificación librada por la Alcaldía de Yauco á solicitud de la Inspección de Montes, relativa á que Verges aparecía en el reparto de tierra del año mil ochocientos sesenta y seis á sesenta y siete por cuatro caballerías en el Barrio de Vegas, no figurando ni anterior ni posteriormente al expresado año económico por dicho terreno: otro informe de la Inspección de Montes, de catorce de Abril de mil ochocientos ochenta y cinco, de que no hay medio para dar cumplimiento á la sentencia, porque la incautación, á nombre del Estado, no comprende el todo ni parte de la concesión Pinatell, no creyendo que á la Inspección corresponda dar posesión de terreno y sólo replantean los terrenos concedidos á Pinatell á costa de los causahabientes de Verges para que puedan ejercer contra los que los ocupen las acciones y derechos que les asistan en la vía y forma que mejor proceda, con cuyo informe se conformó el Consejo Contencioso, y se comunicó á la interesada; copias de varios oficios relativos á nombramiento de peritos y gastos que ocasionara el deslinde y copia de éste practicado en siete de Diciembre de mil ochocientos ochenta y cinco que es como sigue: "En el barrio de las Rubias, jurisdicción de Yauco, á los siete días del mes de Diciembre de mil ochocientos ochenta y cinco, se reunieron Don César de Guillermo, Ingeniero Jefe de Montes, Don Pedro Gabriel Carreras, representante como apoderado á la Sucesión de Don Pedro Lázaro Vergés y Don Lorenzo J. de Vizcarrondo, perito nombrado por la parte para representarla en este acto con el objeto de levantar el plano de los terrenos á que se refiere el informe del Consejo Contencioso administrativo de diez de Julio de mil ochocientos ochenta y cinco y la resolución del Excmo. Sr. Gobernador General de diez y siete del mismo mes recaída en la solicitud formulada por Doña Francisca Estevelina Remond, viuda de Don Pedro Lázaro Verges, pidiendo el cumplimiento de una sentencia del Consejo de Estado y para que

consten, extienden la presente acta que firman en el lugar, día, mes y año arriba expresados.—César de Guillermo.—Pedro Gabriel Carreras.—Lorenzo J. Vizcarrondo.—En el mismo día por los expresados señores fué practicado un reconocimiento del terreno y se acordó, por ambos peritos, comenzar el levantamiento del plano por la quebrada de los Almendrones, lo que se ejecutará en el día de mañana; firman esta diligencia.—César de Guillermo.—Pedro Gabriel Carreras.—Lorenzo J. Vizcarrondo.—En ocho del mismo mes en el lugar expresado por el Sr. Ingeniero y Jefe de Montes, de acuerdo con el perito de la parte y con asistencia de su representación á tomar los datos para el plano de la quebrada de los Almendrones á que se refiere el título y mensura en él consignado, expedido á Don Fernando María Pinatell en mil ochocientos treinta y cuatro.—Dicha quebrada que fué reconocida por todos los Sres. expresados y por Don Simón Fraticelli y Don Francisco Pietri, se recorrió á partir de su embocadura en Río chiquito, la cual se halla en la orilla izquierda de dicho río, un poco más abajo de la casa de Don Vicente Simoncty, situada en la ladera de la derecha del río, por el calce de sus aguas, se siguió la quebrada de los Almendrones hacia arriba, dejando al Norte los terrenos de que el Estado se incautó y vendió á los Señores Fraticelli, Pietri y Tolinche, y tomando los rumbos y distancias que constan en la libreta, cuyas hojas rubrican ambos peritos, fijando así mismo la piedra rajada donde terminan los expresados terrenos de que se incautó el Estado. Aguas arriba de este punto se abandonó el cauce y se fijó el señalado con el número diez y seis en la ladera de la izquierda S. de la quebrada; de éste se pasó al diez y siete que se halla en otra ladera al Norte de la quebrada, desde aquí al diez y ocho, en la misma ladera, de éste al diez y nueve, cruzando la quebrada, y por tanto al Sur de ella, y de éste al veinte, que está situado en la cuchilla de los Carrizales, encima del nacimiento de la mencionada quebrada de los Almendrones, cuyo punto está situado á veinte y seis metros por la cuchilla de la esquina de la casa de Rafael Gómez que está al S. del expresado punto. Desde el punto veinte se recorrió, tomando los rumbos y distancias, la cuchilla de los Carrizales hasta el fijar el punto número veinte y ocho que se halla en el camino que conduce á Yauco que en esta parte va por la cuchilla donde se suspendió en este día la operación, firmando todos para constancia.—César de Guillermo.—Lorenzo J. de Vizcarrondo.—Pedro Gabriel Carreras.—En nueve del mismo mes continuaron las operaciones desde el punto veinte y ocho en que se suspendió el día anterior, fijando á partir del mismo

en la expresada cuchilla los puntos veinte y nueve, treinta y treinta
y uno con los datos que con las mismas formalidades que en
el día anterior constan en las libretas; desde el punto treinta y uno
se fijó el treinta y dos en un cerro, que hay en la ladera que
baja al Río chiquito y está en terrenos que se dicen de Juan Victo-
riano Ferrer, cuyo punto se fijó para referir desde el cauce del río.
En el trayecto hasta ahora recorrido se ha compulsado como punto
de los que se citan en el título de Pinatell, la desembocadura de la
quebrada de los Almendrones en el río Chiquito, no habiéndose en-
contrado ningún otro de los que en aquel título se hace referencia
á pesar de ser ésta la región en que deben encontrarse puntos del
enunciado título, por ser árboles que han debido desaparecer; no
habiéndose continuado por la cuchilla por considerarse que no se ha-
llan comprendidos dentro del título expresado los terrenos que se
encuentran más abajo.—Con el objeto de fijar los puntos que en la
cuchilla corresponden al baldío vendido por el Estado á los Señores
Pietri, Fraticelli y Tolinche, se tomaron los datos á partir del nú-
mero veinte fijado el día anterior en la misma cuchilla y encima del
nacimiento de la quebrada de los Almendrones, recorriendo la cual
se fijaron los puntos treinta y tres, treinta y cuatro y treinta y cin-
co, este último se halla á doce metros más adelante de donde se en-
cuentra el primer punto del baldío que corresponde á Pietri, trein-
ta y seis, treinta y siete y treinta y ocho, está próximo al camino que
va á la hacienda Indiera del Sr. Bartolomey, treinta y nueve, cua-
renta, este punto del baldío que separa á Pietri y Fraticelli, cuaren-
ta y uno que separa á Fraticelli y Tolinche, cuarenta y dos, cuaren-
ta y tres, cuarenta y cuatro, cuarenta y cinco, cuarenta y seis, cua-
renta y siete y cuarenta y ocho al pié de un aguacatillo y es el últi-
mo punto del baldío con Tolinche, y recorriendo el límite de Yauco
y Maricao que es una cuchilla que sirve de límite á la hacienda de
Tolinche, se fijaron para bajar al río y relacionar los puntos que en
él tiene el baldío, los señalados con los números cuarenta y nueve,
cincuenta, cincuenta y uno, cincuenta y dos, cincuenta y tres, cin-
cuenta y cuatro, cincuenta y cinco, cincuenta y seis, y cincuenta y
siete, desde este último punto se fijó el cincuenta y ocho, que está al
pié de un yagrumo en la ladera izquierda del Río Chiquito, ó sea en
la opuesta á la cuchilla recorrida; desde éste se fijó el cincuenta y
nueve, que está en la ladera derecha, y desde éste al sesenta en el
cauce del río, recorriendo el cual y á partir de este punto aguas
abajo se fijaron los sesenta y uno, sesenta y dos, sesenta y tres, se-
senta y cuatro, sesenta y cinco, sesenta y seis, sesenta y siete, sesen-

ta y ocho, sesenta y nueve, setenta y setenta y uno, setenta y dos, setenta y tres, setenta y cuatro y setenta y cinco, siendo esté último el primer punto del río que corresponde al baldío antes mencionado, del cual es el último la desembocadura de la quebrada de los Almendrones en el río chiquito; que se señaló con el número uno. A partir del punto setenta y cinco y por el río, siguiendo su cauce, se fijaron los puntos del setenta y seis á ochenta y uno, donde se suspendió la operación en este día. Han concurrido á presenciar las operaciones de la primera parte de la cuchilla, Don Carlino Melini, y en la parte del baldío de la cuchilla Don Francisco Pietri y Don Stephano Tolinche, firman para constancia.—César de Guillermo.—Lorenzo J. Vizcarrondo.—Pedro Gabriel Carreras.—En diez del mismo mes se continuaron las operaciones expresadas, partiendo del punto ochenta y uno del río chiquito en donde fueron suspendidas en el día de ayer siguiente, cuyo curso se fijaron los puntos, cuyos datos de situación aparecen en la libreta rubricados con iguales formalidades, señalados con los números ochenta y dos, ochenta y tres, ochenta y cuatro y ochenta y cinco, y en este último punto se fijó el señalado con el número uno que es el que sirve de partida y que se halla en la orilla izquierda del río, y en la derecha de la desembocadura de la quebrada de los Almendrones, cuyo punto es el último de los que por el río tiene el terreno baldío vendido á los señores Pietri, Fraticelli y Tolinche, á que se refiere la reclamación formulada por Don Pedro Lázaro Verges.—Desde el expresado punto, número uno, con el fin de situar el guaraguao que, como punto de partida, figura en el deslinde del título de Pinatell á la orilla del río Chiquito y á cuarenta cuerdas al S. de la desembocadura de la quebrada de los Almendrones, se siguió el curso del expresado río, fijándose en él los puntos ochenta y seis, ochenta y siete, ochenta y ocho, ochenta y nueve, noventa, noventa y uno, noventa y dos, noventa y tres, noventa y cuatro, noventa y cinco, noventa y seis, noventa y siete, noventa y ocho, noventa y nueve, ciento, ciento uno y ciento dos; en este punto se presentaron los señores Don Rafael Gómez y Don Eugenio Rodríguez, preguntando cual era el objeto de la operación que se estaba practicando, alegando que los terrenos en ella comprendidos son de su propiedad por haberlos adquirido legítimamente; expresado por el Sr. Ingeniero Jefe de Montes cuál era el objeto de estos trabajos, manifestaron que si bien el expresado Sr. Ingeniero les inspiraba completa confianza, creían en el deber de protestar de la expresada operación, cuya protesta repetirían donde les conviniese, é invitados para pasar á la casa á fin de extender su

protesta, se negaron á ello.  Continuando las mencionadas opera-
ciones y siguiendo siempre el·curso del citado Río Chiquito se fija-
ron en las inmediaciones de su cauce los puntos señalados con los
números comprendidos entre el ciento tres y el ciento diez y seis,
ambos inclusives.  El punto ciento diez y siete se fijó á partir del
ciento quince y está situado en la ladera de la izquierda del mencio-
nado río y·á unos cuarenta metros de su cauce; el ciento diez y ocho
se fijó desde el ciento diez y siete y se halla en la misma ladera, des-
de éste se visó el treinta y dos de la citada ladera, fijado desde la
cuchilla de los Carrizales desde el día anterior, con lo que quedó ce-
rrada la operación, fijándose asímismo desde el expresado punto
ciento diez y ocho los que se señalaron con los números ciento diez y
nueve y ciento veinte, que se, hallan en el cauce del Río Chiquito,
aguas abajo, de los anteriores y aguas abajo también del punto don-
de se supone estaba el guaraguao, fijando como punto de partida en
el deslinde inserto en el título de Don Fernando María Pinatell, con
lo que se dieron por terminadas las operaciones de campo que se han
ejecutado con la brújula de un taquímetro Trenghten, cuya gradua-
ción que·va de N. á Oeste se halla dividida en cuatrocientos grados,
y cuya declinación es de treinta minutos E., habiendo tenido duran-
te ellas á la vista una certificación expedida por Don Joaquín Mayo-
ral del título de amparo expedido á Don Fernando María Pinatell
en mil ochocientos treinta y cuatro que la representación de la Su-
cesión de Don Pedro Lázaro Verges han exhibido y que rubricados
por ambos peritos en la parte alta de todas sus hojas se agrega con
carácter de cultivo á la presente acta que firman para constancia.—
César de Guillermo.—Lorenzo J. de Vizcarrondo.—Pedro Ga-
briel Carreras.—Es copia.—Guillermo.''—Copia del informe de
la Inspección de Montes, relativo á que se declare sin lu-
gar la pretensión de la viuda de Verges, con reserva de sus
derechos contra los poseedores de los terrenos de la concesión para
que los ejercite como corresponde, en vista de lo que acordó el Con-
sejo de conformidad: otra certificación, fólio 1123, librada por el
citado oficial primero de la Administración Central de Contribucio-
nes y Rentas, comprensiva de la primera pieza del expediente forma-
do á consecuencia de varias instancias elevadas al Gobierno por los
señores Pietri, Fraticelli, Verges y Tolinche, referentes al terreno
baldío del Estado, sito en el barrio de las Aceitunas, jurisdicción de
Yauco, en que se inserta una comunicación del Gobierno General di-
rigida al Inspector de Montes, en que, conformándose con el dicta-
men de éste, resuelve dicho Gobierno la incautación de los terrenos

denunciados como baldíos por Don Celestino Arizmendi, formándose el oportuno expediente; que no procede imponer castigo á los denunciados por Arizmendi, por no aparecer probadas las infracciones que decían cometidas y que se deje á salvo el derecho de Arizmendi para reclamar ante los Tribunales la propiedad de los terrenos que comprara á Felipe Ayala en el barrio de las Rubias; se inserta asímismo el acta de incautación levantada en catorce de Diciembre de mil ochocientos setenta y seis por Don Ramón García, ayudante de montes, el Alcalde en Comisión y Secretario del Ayuntamiento de Yauco, el comisario de las Rubias y varios testigos, de ciento setenta cuerdas cultivadas en su mayor parte de café y plátanos; encargándose de su custodia al Comisario del barrio; se inserta también la hoja de aprovechamientos de ese terreno, y pliego de condiciones para la subasta, formado por la Inspección de Montes, con un oficio de ésta al Gobierno, proponiendo la subasta, las instancias de Don Domingo Pietri y Don Simón Fraticelli, solicitando autorización para cultivar y aprovechar el terreno, como también se les conceda la propiedad del mismo, el informe de la Inspección y acuerdo del Gobierno de conformidad con aquellas solicitudes, el acta de deslinde de siete de Mayo de mil ochocientos setenta y siete del terreno de cada uno de los peticionarios, levantándose el plano, fólio 1155, la instancia de Don Pedro Lázaro Vergès manifestando que le pertenecen los terrenos que se trata de vender, sin que se resolviera, por haberse devuelto á Verges los documentos que presentara, varios informes y antecedentes sobre el pleito seguido en San Germán entre Don Pedro Lázaro Vergés y Don José María Rodríguez Arredondo sobre oposición á que se concedan á este último terrenos del primero; terminando con el informe de la Inspección de que el Gobierno ordene al Juzgado de San Germán deje de entender en dicho pleito, y que se adjudiquen los terrenos incautados, á los tres señores colindantes en la parte que cada uno ha cultivado; otra certificación, fólio 1178, expedida por el antedicho funcionario con vista del expediente por Felipe Ayala, pidiendo cuatrocientas cuerdas de terreno de la jurisdicción de Yauco en que se insertan: una certificación del Escribano Secretario de la Junta Superior de Repartimiento de terrenos baldíos, relativa á que Felipe Ayala no había sido agraciado con terrenos baldíos en los partidos de la Provincia; el auto del Juzgado de Ponce, desestimando la demanda de Mompesart contra Ayala, y el superior de la Audiencia Territorial confirmatorio del inferior; la instancia de Ayala, solicitando la concesión de cuatrocientas cuerdas de terreno baldío en el barrio de Vegas, jurisdicción

de Yauco, con el informe del Ayuntamiento de Yauco de que, según varios vecinos ese terreno se consideraba baldío y aunque se decía que perteneciera al Coronel Pinatell, éste jamás ni los sembró ni se utilizó de ellos; la instancia de Don Pedro Lázaro Verges oponiéndose á la pretensión de Ayala, el informe del Secretario de la Junta de terrenos baldíos, de que se hallaba en la Secretaría para darle cuenta á la Junta con la instancia de Ayala; el informe del Ayuntamiento de Yauco con datos y documentos que solicitara previamente, de que los terrenos solicitados por Ayala se encontraban comprendidos en la escritura de venta por Aubert á Mompesart, ocupando dichos terrenos varios indivíduos hacía más de quince años, algunos ó la mayor parte por compra á Ayala, cuando aún se encontraban incultos: y un oficio de la Junta de terrenos baldíos sobre lo resuelto por dicha Junta, desestimando las pretensiones de Felipe Ayala y Don Silvestre Fraticelli, de que se le concedieran como baldíos parte de un terreno que fué mercedado á Don Fernando Pinatell; otra certificación, fólio 1197, expedida por el propio funcionario, comprensiva de la instancia de Pinatell, solicitando como baldías las cuatro caballerías de realengos, el auto de concesión y el deslinde de dicho terreno en veinte y nueve de Noviembre de mil ochocientos treinta y cuatro por el Comisionado Don Juan Troche y agrimensor Don Enrique Rodríguez Feliciano; otra certificación, fólio 1201, librada por el indicado funcionario, en que se inserta la instancia de Don Silvestre Fraticelli, solicitando se le concedan cuatrocientas cuerdas de terrenos baldíos, y el informe favorable del Ayuntamiento de Yauco; una certificación, fólio 1206, expedida por el Secretario del Tribunal contencioso-administrativo, acompañando el plano, fólio 1205, que se le había remitido por este Juzgado, haciendo constar que este plano es conforme con la copia autorizada por el agrimensor Don Armando Morales, que se encuentra al fólio 14 del rollo referente al pleito contencioso-administrativo que siguió Don Pedro Lázaro Verges contra resolución del Gobierno General sobre reversión al Estado de terrenos baldíos sitos en Yauco, sin que en tales autos aparezca que el Señor Fiscal, como representante de la administración, impugnara en ninguno de sus escritos la autenticidad de dicho plano; otra certificación, fólio 1207, expedida por el Secretario de la Sala de Justicia de la Audiencia Territorial en el expediente que se siguió por Don Pedro Mompesart contra Felipe Ayala sobre rendición de cuentas, insertándose el auto del Tribunal Supremo, revocando el que dictara la Audiencia y mandando que se provea sobre la admisión del recurso de casación, remitiendo lo co-

rrespondiente de autos con citación y emplazamiento de las partes, y admitida la apelación se remitió al Supremo el correspondiente testimonio sin existir otra constancia sobre tal recurso; una certificación expedida por la Alcaldía de Yauco, fólio 1212, creditiva de que en los padrones de tierra correspondientes á los años mil ochocientos treinta y ocho, mil ochocientos cuarenta y uno, mil ochocientos cuarenta y tres, mil ochocientos cuarenta y cuatro, mil ochocientos cuarenta y siete, mil ochocientos cuarenta y nueve, mil ochocientos cincuenta, mil ochocientos cincuenta y uno, mil ochocientos cincuenta y dos y mil ochocientos cincuenta y cuatro, aparece Don Fernando María Pinatell con ochocientas cuerdas de terreno que declarara en los correspondientes á mil ochocientos cincuenta y cinco, Don Juan Aubert con el mismo número de cuerdas, en los de mil ochocientos cincuenta y seis, mil ochocientos cincuenta y siete, mil ochocientos cincuenta y ocho, mil ochocientos cincuenta y nueve, mil ochocientos sesenta y mil ochocientos sesenta y uno, Don Pedro Mompesart asímismo con ochocientas cuerdas de terreno y en los padrones de mil ochocientos sesenta y dos, sesenta y tres; y mil ochocientos sesenta y cinco á sesenta y seis, Don Pedro Lázaro Verges, con el repetido número de cuerdas, no apareciendo Don Estéban Gallart: otra certificación, fólio 1213, librada por el Secretario de Sala de la Audiencia Territorial con vista de los autos seguidos en Ponce por Don Pedro Mompesart contra Felipe Ayala sobre rendición de cuentas, insertándose un despacho dirigido por el Alcalde Mayor de Ponce al Comandante del Cuartel de Yauco, para el examen de testigos propuesto como pruebas por Mompesart para acreditar éste que Pinatell vino poseyendo con justo título, buena fé y sin interrupción desde mil ochocientos treinta y cuatro hasta el mil ochocientos cincuenta y tres, en que vendió una posesión de ochocientas cuerdas de terreno en el sitio del Río Chiquito, barrio de Vegas, de Yauco, estando encargados varios de los testigos para vigilarlas y procurar su cultivo por medio de alquilados, que Felipe Ayala, su hermano Antonio, Rufino Ramos, Dionisio Aguilar y varios otros residían en parte de la mencionada posesión que fué del Señor Pinatell colocados por Felipe Ayala, quien sólo podía utilizar los productos, permaneciendo como agregado en la finca, que un plano y diligencia de deslinde acompañado al despacho, es de las ochocientas cuerdas de terreno de Mompesart, siendo aquél relativo también á otros extremos, inclusos el de que Mompesart tomó posesión del terreno en Agosto de mil ochocientos cincuenta y cuatro, viviendo allí hasta Enero de mil ochocientos cincuenta y cinco, apareciendo á continua-

ción las declaraciones de los testigos, en parte conformes con el interrogatorio, negándose por ignorarlo, algunos, que Ayala estuviese en los terrenos en concepto de agregado; insertándose asímismo en la certificación un escrito del Procurador de Don Juan Aubert al Juzgado de Ponce en diez de Agosto de mil ochocientos cincuenta y cuatro pidiendo el deslinde de una estancia en el sitio del Río Chiquito, barrio de las Vegas, de Yauco, de ochocientas cuerdas de terreno para aclarar los verdaderos límites de ese fundo; la providencia de once de dicho mes, accediendo al deslinde y comisionándose para ello al agrimensor Don Pedro Lázaro Verges; el acta levantada por éste y que suscribe solamente relativa á dicho deslinde que manifiesta haber practicado con conocimiento del Juez Local, asistencia del comisario del barrio y diseño de los terrenos limítrofes en la siguiente forma: se dió principio de un tronco vivo de guaraguao señalado en el plano de esos terrenos y que agrego á estas diligencias para mayor claridad, punto divisorio dado por Juan Antonio Montes, actual colindante por la parte del Sur, con terrenos que fueron de Don Basilio y Don Diego de Torres; cuyo punto se halla situado en el margen del Río Chiquito, frente á otro tronco vivo también de Laurel, que se halla al borde opuesto del de guaraguao que se encuentra en la orilla occidental de dicho río y señalado de la letra A. en el presente plano.—De este punto se tiró una línea recta con rumbo al Norte, cuarentimedio grados Este, que forma los límites con el referido Montes y con mil cuarenta y ocho varas castellanas de Burgos de longitud, se llegó al segundo punto de este mismo colindante, que lo constituye un tronco muerto de Aguacatillo con arbolito de Poma-rosa al pié, situado en la vera occidental del camino real nombrado de los Carrizales que conduce de Yauco á Lares, punto marcado de la letra B. en el plano, en que confinan los terrenos que Montes hubo de los Torres y otros, al Oriente, que Don Santos Semidey hubo de Don Félix Mattei.—De este último punto siguióse al borde occidental de dicho camino hacia el Nordeste, el cual deja divididos al Oriente los indicados terrenos de Semidey y midiendo trescientas setenta y nueve varas por la línea sinuosa que describe, se llegó á la cuesta de la cuchilla de los Guayabales que forma los lindes de Yauco con San Germán á un estacón C. que se amojonó en el borde oriental del enarrado camino, punto en que termina Semidey y vienen á confinar tierras de la propiedad de Don Silvestre Fraticelli, situadas al Saliente de este mismo camino que las divide con las que se deslindan.—Del estacón dicho, continuando por el borde Oeste del propio camino que vá á Lares, constituído sobre la continuación de

la cuchilla divisoria de los indicados partidos, y deja al otro lado al referido Fráticelli, se siguió la línea sinuosa que describe con dirección hacia el Noroeste y con mil veinte y nueve varas se llegó frente á un árbol de Mauricio D. en que terminan las tierras de este último y principian las de Don Juan Bautista Plumet, situadas también al Oriente del mismo camino por el que se continuó en la misma dirección con seiscientas veinte y cuatro varas y un cuarto varas hasta la desembocadura E. de este camino con el vecinal que va al sitio de Quebrada-Bonita.—De la unión de dichos caminos, dejando el principal que conduce á Lares para seguir el último, formado también sobre esa cuchilla que divide los dos montados territorios, y tiene su dirección al Noroeste, se midieron por su línea tortuosa, dejando al otro lado tierras del mismo Plumet, quinientas noventa y dos varas y tres cuartos, con las que se llegó á un árbol de Ciralillo ó Cacao silvestre, con la unión F. de este último camino de Quebrada-Bonita con el llamado de las Aceitunas, punto en que se queda Plumet, y siguen terrenos de la Sucesión de Don José María Pacheco.—Abandonando el primero de estos caminos para seguir el segundo de las Aceitunas, trazado también sobre la continuación de la cuchilla divisoria, la cual corre aquí también al Noroeste, para luego doblar al Sudeste, se relevó la línea sinuosa que forma dicho camino que deja á su parte opuesta, es decir, al Norte, las ya referidas fincas, digo, tierras de la Sucesión de Pacheco, y computadas las longitudes de sus diversos rumbos, resultó la total de mil seiscientas setenta y tres varas y tres cuartas, hasta un árbol de mato ó algarrobo de la Sierra, marcado en su tronco con una cruz, punto señalado de la letra G. en este plano, y divisorio con tierras de Don Antonio Cabassa, vecino de Cabo Rojo, representado por Don Pedro Santoni, quien dió los linderos, hallándose dicho árbol de mato en el borde oriental del ya citado camino de las Aceitunas.—De este último punto y límites con el enarrado Cabassa que queda al Oeste, se tiró una línea recta al rumbo Sud cinco y medio grados Este, de seiscientas veinte y seis varas de longitud á caer al ya nombrado Río Chiquito, á un pequeño árbol de capá junto á dos palmas de sierra en el medio del propio Río, frente á la boca de un pequeño arroyo seco que sale del Oeste, punto designado de la letra H. en este plano, y divisorio con el repetido Don Antonio Cabassa.—De allí se siguió el curso sinuoso de las aguas de ese río en el sentido de su vertiente que corre hacia el Sud, y por su borde izquierdo y midiéndose por la línea tortuosa que describe mil ochocientas setenta y tres varas y tres cuartos, se llegó á la embocadura Y. en el propio Río, de la quebrada llamada de los Al-

mendrones. Y continuándose por el Río abajo, vuelta y revuelta, con dos mil seiscientas una vara y tres cuartos, se llegó al tronco de guaraguao A. en que se dió principio y término á este deslinde que produjo un área de ochocientas cinco cuerdas con diez y nueve céntimos de otra; el escrito de conclusiones de la parte de Mompesart en dicho pleito, reasumiendo y estimando probado: que el Señor Pinatell era dueño exclusivo de las ochocientas cuerdas de terreno que hoy pertenecen á Mompesart, que la parte en que están Ayala y sus agregados colindantes con Juan Antonio Montes, sucesor de los terrenos de Don Diego Torres, corresponde aquellas ochocientas cuerdas, teniendo como tiene, los mismos límites que designa el plano: que el Sr. Pinatell á nadie ha vendido sino á Gallart; éste á Aubert; y Aubert á mi principal: que no teniendo y no habiendo tenido Rodríguez terrenos en el lugar de Río Chiquito y barrio de las Vegas como declaró á fojas ciento siete, es claro, que nada pudo allí vender á Ayala; que á mayor abundamiento, no ha exhibido los títulos justificativos ni tampoco los de los terrenos que dice haber comprado á Sabater, que los únicos adquiridos han sido las cuatrocientas cuerdas que hubo de Torres, en mil ochocientos cuarenta y cinco, la mitad y la otra mitad de Cabassa en mil ochocientos cincuenta y cuatro; que Mompesart queda igualmente probado que dejó á Ayala en la estancia bajo el contrato verbal de que hizo mérito en su demanda; que Ayala tan no se contemplaba dueño de ella que intentó solicitar del Gobierno los terrenos: que desesperanzado y en la necesidad de devolver la finca, ó del desalojo de ella, compró para retirarse la posesión de Cabassa: que á ser cierta la compra de cuatrocientas cuerdas á Rodríguez y Sabater figuraría Ayala en los padrones con ochocientas, mediante las otras cuatrocientas habidas de Ferrer y Cabassa, en tanto que en mil ochocientos treinta y ocho es cuando principia á aparecer como propietario de sólo veinte y cuatro cuerdas, y de dos y media más en mil ochocientos cuarenta, que por consiguiente, es falso que poseyera hacía más de veinte años, según han dicho sus testigos, cuatrocientas cuerdas; queda, en fin, demostrado que su informativo de nada vale en estos autos por falta de citación contraria, y que su demás prueba tiene que sucumbir al atestado de la Alcaldía de Yauco, á los documentos públicos aducidos por Mompesart y al mérito colosal que arrojan las demás probanzas de éste. Nunca, por tanto, ha sometido al fallo de los Tribunales un negocio tan claro y de datos tan recomendables que patentizan la justicia de Mompesart: otra certificación, fólio 1257, librada por el Escribano de actuaciones del Juzgado de Ponce, con vista

del expediente sobre información de insolvencia por Don Felipe Ayala en que se inserta el escrito de éste, manifestando que no contaba con bienes de ninguna clase para sufragar los gastos indispensables del litis que llevaba con Mompesart, porque los que tenía le habían sido entredichados por el citado Mompesart y no podía disponer de ellos; las declaraciones de testigos conformes con esa manifestación, y la providencia del Juzgado mandando oir á Mompesart; se practicó la prueba pericial propuesta, declarando los peritos, fólio 1068, que el día diez y seis de Septiembre, terminados los trabajos referentes á la prueba de Agosto, practicaron la operación referente á la parte actora y á ese fin comenzaron por reconocer el Río Chiquito desde la desembocadura de los Almendrones, aguas abajo, y comprobaron por este medio la exactitud del plano de la Inspección de Montes, terminados los trabajos en ese día; que al siguiente, se continuó midiendo en dirección Este y á partir del punto señalado por una estaca en que se había señalado en la operación del día anterior las veinte cuerdas que determinan uno de los linderos de la concesión Pinatell sin que pudieran terminar esa operación y dejando señalado un punto al pié de un guaraguao en terrenos de Pietri, que fueron los únicos atravesados en esa operación: que este punto quedó á doscientos treinta y seis metros cincuenta céntimos con rumbo al Este desde la desembocadura de la quebrada de los Almendrones en el río-chiquito: que no pudiendo disponer de más tiempo suspendieron los trabajos sin que les sea posible dictaminar sobre ninguno de los extremos objeto de la prueba, y solo dar la opinión de que los terrenos objeto de la concesión Pinatell, deben ser los comprendidos por un rectángulo que teniendo uno de los vértices en la desembocadura de la quebrada de los Almendrones en el río chiquito, y á partir de este punto fijo y natural del terreno, puede deslindarse del modo siguiente: desde el punto dicho, midiendo con rumbo Este veinte cuerdas se determinará un vértice del rectángulo, desde este vértice, midiendo cuarenta cuerdas con rumbo al Sud se determinará otro vértice; desde éste, midiendo veinte cuerdas con rumbo al Oeste, se situará el tercer vértice y desde éste, midiendo cuarenta cuerdas con rumbo al Norte, deberá encontrarse el primer vértice, situado en la desembocadura de la quebrada de los Almendrones en el Río Chiquito, quedando así cerrado el rectángulo; y por último, declararon como testigos, Gregorio Santiago Galarza, fólio 1103, manifestando que en mil ochocientos cincuenta y cinco presenció el deslinde de ochocientas cuerdas de terreno en el barrio de Vegas, lugar del Río Chiquito, jurisdicción de Yauco, por el agrimensor Vergés

con asistencia del comisario del barrio y colindantes de la finca, y que dentro de ese terreno están comprendidas las fincas de Pietri y Agostini, no sabiendo á quién pertenecía la finca de ochocientas cuerdas, pero le consta que en ella ocupaba Felipe Ayala una casa que fabricó Don Pedro Mompesart, expresando al ser repreguntado: que no entendía lo que quería decir la palabra deslinde; y Don José María Rodríguez, fólio 1269, vuelto, manifestó: que es cierto que las doscientas cuerdas que señaló en las Vegas, creyéndolas baldías, se convenció luego que formaban parte de las ochocientas concedidas á Pinatell, desistiendo del pleito seguido en San Germán y que dentro de las citadas ochocientas cuerdas están comprendidas las fincas de Don Francisco y de Don Domingo Pietri.

22o.—*Resultando:* de las pruebas practicadas á instancias de los demandados, que se trajeron documentos, practicándose cotejos y prueba pericial en la forma siguiente: se trajeron certificación fólio 1396 expedida por el Registrador, que comprende inscripción hacienda "Gloria" á favor de Fraticelli Hermanos, adquirida y con los gravámenes que constan de dicha inscripción posesoria: copia fólio 1402 de la escritura de divisoria de bienes de Don Silvestre Fraticelli, Doña Teodora Pietri y el hijo de ésta nombrado Agustín, otorgada por sus herederos ante el Notario de Yauco á cuatro de Agosto de mil ochocientos setenta y nueve, figurándose entre dichos bienes varias cuerdas de terreno con nombres especiales de las piezas á que pertenecen: copia de la escritura, fólio 1418, otorgada en Yauco á diez y nueve de Abril de mil ochocientos setenta y seis por Felipe Ayala, sobre venta á favor de Don Mariano Bartolomey de cien cuerdas de terreno en el barrio de Rubias, jurisdicción de Yauco, adquiridas de Cabassa y Compañía en escritura á treinta de Octubre de mil ochocientos cincuenta y cuatro, verificándose la venta por cuatrocientos pesos recibidos: otra copia, fólio 1422, otorgada en Yauco á cuatro de Agosto de mil ochocientos sesenta y nueve por Don Alejandro Bartolomey, como apoderado de Don Mariano de igual apellido y de Doña Ana María Fraticelli, sobre venta y cesión á favor de Don Luis Felipe, Don Pablo Simón y Don Alejandro Fraticelli de la mitad de la hacienda de café nombrada "Emilia", de ciento sesenta cuerdas de terreno, radicada en el barrio de Rubias, jurisdicción de Yauco: copia, fólio 1456, escritura de venta en Mayagüez á veinte y nueve de Julio de mil ochocientos setenta y seis por Don Mariano Bartolomey á Don Silvestre Fraticelli, de las cien cuerdas de terreno que había adquirido de Felipe Ayala, sitas en el barrio de Rubias del término de Yauco por la cantidad de quinientos pesos

recibidos: copia, fólio 1488, de la escritura en Yauco á treinta de Oc-
tubre de mil ochocientos cincuenta y cuatro por Lluch y Amill, como
apoderado de Cabassa y Compañía, sobre venta á favor de Felipe
Ayala de doscientas cuerdas de terreno en el barrio de Rancheras,
sitio del Frío, jurisdicción de Yauco, que adquirieron sus dueños por
compra á Don Francisco Díaz Resino, verificándose la venta por qui-
nientos pesos pagaderos á plazos, insertándose el título expedido por
la Junta de repartimiento de terrenos baldíos en doce de Febrero de
mil ochocientos cuarenta y nueve á favor de Don Francisco Díaz Re-
sino de las indicadas doscientas cuerdas de terreno: copia, fólio 1500,
otorgada en cuatro de Septiembre de mil ochocientos ochenta y dos
por la Sociedad Fraticelli Hermanos, sobre venta á favor de Don Vi-
cente Limarola y Benigni, de la hacienda cafetal nombrada "Gloria"
antes mencionada, compuesta de doscientas sesenta cuerdas, radica-
da en el barrio de Rubias, jurisdicción de Yauco, verificándose la
venta por treinta y ocho mil doscientas sesenta y dos pesos treinta y
cuatro centavos: copia, fólio 1514, de la escritura otorgada en Yauco
á veinte y ocho de Julio de mil ochocientos cincuenta y tres, sobre
venta por Felipe Ayala á favor de Santiago Ruíz, de cincuenta cuer-
das de terreno en el barrio de Vega, jurisdicción de Yauco, que ad-
quirió por compra á diversos dueños, verificando la venta por seten-
ta y cinco pesos recibidos: otra copia, fólio 1523, de la escritura otor-
gada en Cabo Rojo á doce de Junio de mil ochocientos cuarenta y
nueve por Don Francisco Díaz sobre venta á favor de Cabassa, Vig-
nals y Compañía de doscientas cuerdas de terreno en el barrio de
Frailes, sitio de las Rancheras, lugar conocido por el Frío, jurisdic-
ción de Yauco, que había adquirido por concesión de la Junta de
baldíos de doce de Febrero de dicho año, verificando la venta por
la suma de doscientos pesos recibidos: copias de las escrituras de
que se acompañó copias simples por Don Francisco Lluch Negroni,
sobre ventas de terrenos por Don Santiago Vivaldi á José Gregorio
Ramos, por éste á Don Rafael Gómez Díaz y por éste á Don Francis-
co Lluch Negroni, fólios 1947, 1954, 1970 y 1978: copia, fólio 1962,
de la escritura otorgada en Yauco á veinte y dos de Diciembre de mil
ochocientos noventa por Don Francisco Lluch Negroni sobre venta
á favor de Don Domingo y Don Francisco Pietri de las veinte cuer-
das de terreno que había adquirido de Don Rafael Gómez Díaz, ve-
rificando la venta por mil pesos recibidos: se cotejó, fólio 2054, con
su original, la escritura de venta por Don Engenio Rodríguez á fa-
vor de Don Domingo y Don Francisco Pietri en treinta y uno de Ma-
yo de mil ochocientos ochenta y seis: se cotejó, fólio 1556, la copia de

escritura presentada por la parte de Don Domingo Pietri sobre venta á su favor de Don César de Guillermo en trece de Octubre de mil ochocientos setenta y siete: se cotejaron asímismo, fólio 1567, las copias de escrituras presentadas por el mismo Pietri otorgadas por Felipe Ayala á Rufino Ramos en siete de Marzo de mil ochocientos cincuenta y seis, la otorgada por Felipe Ayala á Rufino Ramos á catorce de Mayo de mil ochocientos sesenta y dos, la otorgada por Ramos á Don Domingo y Don Pablo Francisco Pietri en veinte y ocho de Abril de mil ochocientos setenta y uno, la otorgada por Felipe Ayala á Don Juan Bautista Monttaggioni en veinte y ocho de Junio de mil ochocientos sesenta y siete, la otorgada por Ayala á Gregorio Santiago en quince de Febrero de mil ochocientos sesenta y siete, la otorgada por Don Andrés Agostini á Don Juan Cedeño en cinco de Diciembre de mil ochocientos setenta y seis, la otorgada por Cedeño á los hermanos Pietri en veinte y ocho de Mayo de mil ochocientos ochenta y cuatro, la otorgada por Ramón Camacho á Don Domingo Pietri en siete de Mayo de mil ochocientos ochenta y cinco, la otorgada por Don Rafael Gómez á Don Domingo Pietri en veinte y tres de Diciembre de mil ochocientos noventa, la otorgada por Don Francisco Lluch á Don Domingo Pietri en veinte y dos de Diciembre de mil ochocientos noventa, la otorgada en trece de Enero de mil ochocientos noventa y la otorgada en trece de Enero de mil ochocientos noventa por Don Rafael Gómez á Don Francisco Lluch Negroni, encontrándose dichas copias conformes con sus originales: se cotejaron también con sus originales, fólio 1540, vuelto, las certificaciones libradas por el Ayudante de Montes y plano acompañado por la parte de Agostini que ocupan hoy los fólios 1527 al 1537 y se encontraron en su esencia conformes: se trajo la certificación, fólio 1574, librada por el Secretario de Sala de la Audiencia con vista del pleito seguido por Don Pedro Mompesart contra Felipe Ayala sobre rendición de cuentas del arrendamiento de un terreno, insertándose la declaración de Don Juan Aubert, manifestando éste que poseyó el terreno, un año y quince meses, pero sin saber su extensión y calidad por no haberlo visto jamás, asegurando que aceptó la escritura de compra simulada por favor hacia el enagenante y Don Pedro Lázaro Verges que así se lo suplicó sin que hiciera mensurar el terreno; la declaración de Don Esteban Gallart de que no llegó á ver el terreno siquiera y que la adquisición la hizo por cuenta y para Don Pedro Lázaro Verges, ignorando si estaba ó no cultivado el terreno cuando lo compró y cuando lo vendiera á Don Juan Aubert; la declaración de Don Fernando María Pinatell de que no sabía

sí el terreno había sido desmontado, plantado y abierto, porque si alguno había en tal estado, esos trabajos habían sido hechos por personas intrusas, que no tenía administrador alguno en la finca y sólo á Don Enrique Rodríguez Feliciano le encargó la vigilase; la sentencia superior é inferior dictada en dicho pleito, y el escrito de la parte de Mompesart sobre prórroga del término para el recurso de casación por el fallecimiento de Mompesart, prórroga que fué negada por auto superior de cinco de Enero de mil ochocientos sesenta: certificación, fólio 1591, por el Oficial primero de la Administración Central de Contribuciones y Rentas creditiva de que en el expediente sobre medición y tasación del baldío de las Aceitunas, en Yauco, y la mensura y tasación para la venta de cincuenta y ocho cuerdas de Don Domingo Pietri, consta que la venta se hizo por nueve mil cuatrocientos sesenta y cuatro pesetas treinta y seis céntimos que pagó en diferentes plazos, ingresando el último en la Colecturía de Guayanilla en dos de Setiembre de mil ochocientos setenta y ocho: otra certificación, fólio 1990, librada por el Secretario de Sala de la Audiencia Territorial, comprensiva de varias constancias del pleito seguido por Mompesart contra Ayala y que se relacionan con escritos allí presentados, declaraciones de testigos y escrito de conclusiones de la parte de Felipe Ayala: se practicó prueba pericial á instáncia de Don Pedro Angel Agostini, declarando los peritos, folio 1896, que con los datos que llevaron de autos y los planos que mostrara el encargado de la parte actora, reconocieron primeramente los terrenos en que se encontraban, tomando como base la desembocadura de la quebrada de los Almendrones, y desde esa desembocadura recorrieron las orillas del Río-Chiquito, aguas arriba, hasta un punto divisorio entre los terrenos de Don Simón Fraticelli y Don Angel Pedro Agostini, comprobándose al propio tiempo la situación exacta de los puntos en el plano levantado por el Inspector de Montes, Don César de Guillermo, que reconocida la quebrada desde un punto próximo á su nacimiento hasta su desembocadura en el Río Chiquito, se hizo estación con el aparato, dirigiendo una visual con rumbo al Este absoluto, poniendo una señal en esta dirección y con la cadena se midieron cincuenta metros, colocando una estaca al llegar á ese punto. Con lo cual opinan que los terrenos de la concesión Pinatell no deben estar al Norte de la línea con rumbo Este franco trazado y quedando la quebrada precisamente al Norte de esa línea, es claro, que los terrenos situados al Norte de la quebrada han de quedar fuera de los terrenos de la concesión Pinatell, quedando, por consiguiente, fuera de ellos, los terrenos de Don Angel Pedro Agostini.

230. *Resultando:* de la prueba testifical á instancia del demandado Agostini, que declararon Don Ramón Camacho, fólio 1611, Don Ramón Vélez Cintrón, fólio 1614, Mateo Vélez Cintrón, fólio 1617, Prudencio Matos Santiago, fólio 1620, vuelto, manifestando saber de referencia lo de la concesión de doscientas cuerdas de terrenos por la Junta de Baldíos á Don Francisco Díaz Resino, en doce de Febrero de mil ochocientos cuarenta y nueve y constarles de ciencia cierta que en Junio de mil ochocientos cuarenta y nueve, vendió Díaz Resino esas doscientas cuerdas á Cabassa, Vignals y Compañía, los que entraron á poseerlas á título de dueños hasta el mes de Octubre de mil ochocientos cincuenta y cuatro, en que las vendieron á Felipe Ayala, y éste entró en la posesión tranquila y pacífica como dueño, sin interrupción, hasta mil ochocientos cincuenta y ocho, que vendió cien cuerdas por documento privado á Don Mariano Bartolomey, que entró en igual posesión, cultivándolas y usufructuándolas hasta mil ochocientos sesenta y cinco en que las vendió á Don Silvestre Fraticelli; el cual tuvo la posesión tranquila y sin interrupción de esas cien cuerdas hasta su fallecimiento ocurrido en mil ochocientos setenta y uno, que continuaron sus sucesores en esa posesión pacífica hasta el año de mil ochocientos setenta y nueve, en que tuvo lugar la división y adjudicación entre los herederos: que los testigos Gregorio Santiago y Rodríguez, fólio 1624, vuelto, Manuel Torres Casiano, fólio 1627, y Manuel María Ruíz, fólio 1692, vuelto, expresan que desde antes de mil ochocientos sesenta Don Mariano Bartolomey era dueño de una hacienda nombrada Emilia sita en el barrio de Vegas, compuesta de trescientas cuerdas que había comprado á Felipe Ayala: que Bartolomey y Don Silvestre Fraticelli celebraron un contrato social, bajo la denominación de Fraticelli y Bartolomey, en mil ochocientos sesenta, trasmitiendo Bartolomey á Fraticelli la mitad de la hacienda Emilia, cuya sociedad se disolvió al fallecimiento de Fraticelli, adjudicándose á la sucesión de éste la mitad de la hacienda y la otra mitad á Bartolomey, después de mensurarse esa finca, que resultó de una cabida de ciento sesenta cuerdas, las que vinieron poseyendo la sociedad Fraticelli y Bartolomey desde antes de mil ochocientos sesenta hasta el setenta y uno, en que tuvo lugar la disolución; y que los testigos Don Ramón Cruz Quiñones, fólio 1633, vuelto, y Don Esteban Tolinche y Morfi, fólio 1636, vuelto, declararon constarles que en mil ochocientos setenta y tres los herederos de Don Silvestre Fraticelli y su esposa Doña Teresa Pietri é hijo Don Agustín practicaron las operaciones de división del caudal, adjudicándose veinte y dos cuerdas cincuenta céntimos á cada uno de los herederos, formando una totalidad de ciento ochenta cuerdas, procedentes

ochenta, de la sociedad Fraticelli y Bartolomey y las ciento de la compra que el finado Don Silvestre hiciese á Bartolomey en mil ochocientos setenta y cinco; que dicho Bartolomey en Agosto del setenta y nueve vendió á Fraticelli Hermanos las ochenta cuerdas que se le adjudicaron de la hacienda Emilia al disolverse la sociedad Fraticelli y Bartolomey, cuya sociedad Fraticelli Hermanos ó sea los miembros que la componían, compraron á sus hermanos en Agosto del setenta y nueve, las noventa cuerdas de terreno que heredaran de sus padres y las doce cuerdas ochenta y seis céntimos que heredaran de su difunto hermano Agustín, viniendo á ser dueños del total de las doscientas sesenta cuerdas, las que vendieron á Don Vicente Limarola en mil ochocientos ochenta y dos: que Limarola vendió en Marzo de mil ochocientos noventa las mismas doscientas sesenta cuerdas á Don Angel Pedro Agostini y que tanto éste, como los anteriores dueños, vinieron poseyendo las tierras quieta y pacíficamente sin interrupción de persona alguna, cultivándolas y usufructuándolas como únicos y exclusivos dueños.

24.—*Resultando*: que de la prueba testifical á instancia de Don Domingo Pietri y Don Francisco Cedeño: que los testigos Don Manuel Cintrón y Lugo, fólio 1723, Don Ramón Vélez y Cintrón, fólio 1728, vto., Don Francisco Quiñones y Santiago, fólio 1735, Don Prudencio Matos Santiago, fólio 1740, y Don Ramón Camacho y Montes, fólio 1746, declararon constarles que Felipe Ayala estuvo poseyendo ciento sesenta cuerdas que compró á Don Enrique Rodríguez Feliciano, cultivándolas como dueño á sus expensas, sembrando en ellas café, plátanos y otros frutos menores; que Ayala vendió sesenta cuerdas con algunas fincas de café y plátanos en el barrio de Vegas á Don Rufino Ramos en mil ochocientos cincuenta y seis, siendo el terreno el mismo constante de la escritura, fólio 317, de que se les dió lectura, vendiendo Ayala á Ramos cien cuerdas más de terreno que es el mismo constante de la escritura de catorce de Marzo de mil ochocientos sesenta y dos, fólio 320, vendiendo Ramos los dos trozos que forman ciento sesenta cuerdas á Don Domingo y Don Francisco Pietri en veinte y ocho de Abril de mil ochocientos setenta y uno, siendo las mismas tierras que se describen en la escritura del fólio 324, siendo la posesión de Pietri como de sus antiguos dueños, quieta y tranquila, sin interrupción alguna, á cuyas tierras los señores Pietri, además de cultivarlas, establecieron en ellas casa de habitación y almacén, glacis y demás propio para la elaboración del café, expresando el testigo Camacho y Mon-

tes saber de referencia la posesión de terrenos en los barrios de Vegas y Rubias por Don Agustín Sabater y Don Enrique Rodríguez Feliciano en el año mil ochocientos treinta y cuatro, los que vendieron sesenta cuerdas á Felipe Ayala; y Rodríguez Feliciano vendió al mismo Ayala otras cien cuerdas de terreno, cuyas últimas ventas no les constan á los demás testigos por consignar que solo saben de la posesión del terreno por Ayala, ignorando la procedencia ó adquisición del mismo; que los testigos Lorenzo Cruz Rivera, fólio 1752, Agustín Ayala y Rivera, fólio 1755 vto. y Ramón Cruz y Quiñones, fólio 1759, declaran constarle que Felipe Ayala, desde el año mil ochocientos treinta y cuatro, era dueño de terrenos en el barrio de Rubias, jurisdicción de Yauco, vendiendo cinco cuerdas á Rufino Ramos en mil ochocientos sesenta y dos, las que enagenó Ramos en mil ochocientos sesenta y cuatro á Anastasio Cruz, y éste, en mil ochocientos setenta y seis á los hermanos Don Domingo y Don Francisco Pietri, quienes, como los anteriores dueños, poseyeron el terreno pacífica y públicamente sin interrupción alguna, sembrándolo de café y plátanos y poniéndolo en condiciones de cultivo en el concepto de absolutos dueños, que los testigos Ramón Rodríguez y Rodríguez, fólio 1763 vto., Manuel María Ríos Vélez, fólio 1767, y Felipe Morales y Vargas, fólio 1771 vto., los dos primeros aseguran que desde niños vieron á Felipe Ayala poseyendo tierras en el barrio de Rubias, jurisdicción de Yauco, vendiendo á Rufino Ramos quince cuerdas en mil ochocientos cincuenta y nueve, las que enagenó Ramos en mil ochocientos sesenta y seis á Don Antonio Ramos y éste á los hermanos Don Domingo y Don Francisco Pietri en mil ochocientos setenta y seis, poseyéndolas todos quieta, pacífica y públicamente en concepto de dueños, sin interrupción alguna, cultivando el terreno que fincaron de café y otros frutos, cuyos hechos de posesión constan al otro testigo Morales, pero sin determinar el número de cuerdas ni fechas de las adquisiciones: que los testigos Don Benero Negrón y Patrón, fólio 1780 vto., Don José Montalvo y Lugo, fólio 1784, y Don Manuel Quiñones Santiago, fólio 1787 vto., declaran saber de referencia que Felipe Ayala poseía en el año treinta y cuatro una porción de terreno en el barrio de Rubias de Yauco, á título de dueño, vendiendo á León Avilés doce cuerdas, constándoles que Avilés en mil ochocientos ochenta y dos vendió ese terreno á Ramón Camacho, quien lo inscribió en el Registro, enagenándolo luego y en mil ochocientos ochenta y cinco á Don Domingo y Don Francisco Pietri, quienes como los anteriores vendedores, los poseyeron pacífica y públicamente en el con-

cepto de dueños, sin interrupción de especia alguna, cultivándolas, usufructuándolas y sembrando en ellas café, plátanos y otras plantaciones menores: que los testigos Don Simón Fraticelli, fólio 1775 vto. y 1873 vto., Don Estéban Tollinchi y Morfi, fólio 1878 vto., y Don Juan Bautista Rodríguez y Vélez, fólio 1884 vto., declaran que Felipe Ayala poseyó terrenos en el barrio de las Rubias de Yauco y en el año de sesenta y siete vendió cincuenta cuerdas á Don Juan Bautista Montaggioni, quien, por documento privado, las enagenó á Don Andrés Agostini en Abril de mil ochocientos setenta y tres, vendiéndolas Agostini en mil ochocientos setenta y seis á Don Juan Cedeño, y éste á los hermanos Pietri en veinte y ocho de Marzo de mil ochocientos ochenta y cuatro, cuyo terreno es el mismo constante del documento y escrituras de trasmisiones de que se les dió lectura, y lo poseyeron tanto los hermanos Pietri como los anteriores vendedores quieta, pública y pacíficamente, sin interrupción alguna, cultivándolo y fructuándolo como únicos dueños: que los testigos Don Ramón Rodríguez y Vélez, fólio 1972, Marcos Rodríguez Almodóvar, fólio 1795, y Antonio Lugo Velasco, fólio 1798, manifestaron en sus respectivas declaraciones ser cierto y constarles que Don Manuel Olivieri era dueño de ciento treinta cuerdas en el barrio de Rubias desde el año mil ochocientos cincuenta y nueve, vendiendo treinta cuerdas á Don Eugenio Rodríguez en diez y siete de Mayo de mil ochocientos setenta y dos, cuyas treinta cuerdas vendió Rodríguez á los hermanos Pietri en mil ochocientos ochenta y cuatro, quienes lo mismo que los antiguos vendedores poseyeron el terreno quieta, pacífica y públicamente sin interrupción alguna, fincando el terreno de café, plátanos y otros frutos menores, usufructuándolos como dueños exclusivos y pagando por el terreno contribuciones al Estado y Municipio: que los testigos Don Manuel Río y Vélez, fólio 1891 vto., Don Manuel Torres Casiano, fólio 1895 vto., y Agustín Ayala y Rivera., fólio 1900 vuelto, declaran: que Ayala poseía terrenos en el barrio de Vegas, de Yauco, vendiendo en el año sesenta y siete, diez cuerdas á Gregorio Santiago, y en Julio del cincuenta y tres, cincuenta cuerdas á Santiago Ruíz, enagenando éste ocho cuerdas á Gregorio Santiago en mil ochocientos sesenta siete; que Santiago enagenó esas diez y ocho cuerdas en Noviembre de mil ochocientos ochenta y uno á Don Santiago Chiaramonti, quien las vendió en Enero de mil ochocientos ochenta y cinco á Don Rafael Gómez Díaz y éste á los hermanos Pietri en veinte y tres de Diciembre de mil ochocientos noventa, siendo ese terreno el mismo constante de las escrituras de trasmisión, fólio 385, de que se les

dió lectura y que, tanto los hermanos Pietri, como los antiguos vendedores, poseyeron el terreno quieta, tranquila y pacíficamente, sin interrupción alguna, cultivándolo y usufructuándolo en nombre propio como únicos y exclusivos dueños: que los testigos Don Ramón Cruz Quiñones, fólio 1083 vto., y Don Domingo Rodríguez Ruíz, fólio 1807 vuelto, expresan constarle que Felipe Ayala, desde el año mil ochocientos treinta y cuatro, era dueño de terrenos en el barrio de Rubias, jurisdicción de Yauco, vendiendo veinte y cinco cuerdas en mil ochocientos cincuenta y seis á Rufino Ramos, quien las enagenó en mil ochocientos sesenta y dos á Anastasio Cruz, éste en mil ochocientos setenta y seis á Don Rafael Gómez Díaz, y éste las vendió en veinte y tres de Diciembre de mil ochocientos noventa á los hermanos Pietri, quienes, como los antiguos dueños, poseyeron ese terreno quieta, pacífica y públicamente sin interrupción alguna, cultivándolo y usufructuándolo como absolutos y exclusivos propietarios: que los testigos Monserrate Pacheco y Pérez, fólio 1812, Don José Julián Vélez y Cintrón, fólio 1816 vto., y Don Mateo Vélez Cintrón, fólio 1820 vto., manifiestan en sus respectivas declaraciones constarle que en el año de mil ochocientos treinta y cuatro era dueño y poseedor Felipe Ayala de una porción de terreno en el barrio de Rubias de Yauco, vendiendo en mil ochocientos cuarenta y tres, treinta y dos cuerdas y un cuadro á Sebastián Ramos, quien enagenó en mil ochocientos cincuenta y nueve, veinte y cinco cuerdas y un cuadro á María Marina Rosario y Pérez, y las siete restantes á Andrés Avilés y Ramos en el propio año cincuenta y nueve: que la María Marina Rosario y Pérez y el Avilés, enagenaron dicho terreno en mil ochocientos sesenta y nueve á Don Rafael Gómez Díaz y éste en veinte y tres de Diciembre de mil ochocientos noventa á los hermanos Pietri, quienes, lo mismo que los anteriores vendedores, poseyeron el terreno quieta, pacífica y públicamente, sin interrupción alguna, cultivándolo de café, plátanos y frutos menores y usufructuándolos como únicos y exclusivos dueños: que los testigos Don Pedro Camacho, fólio 1826, vuelto, y Ramón Camacho, fólio 1830, declararon constarles que desde el año sesenta y dos venían poseyendo en el barrio de Rubias de Yauco, Juan Cedeño y Caraballo, doce cuerdas de terreno, Asunción Montes y Sánchez cuatro cuerdas, José Ramón Vega dos y media cuerdas, Monserrate Ayala y Cruz dos cuerdas, é Isidro Cruz y Mercado dos cuerdas, cuyos terrenos tenían plantados de café y frutos menores, y los vendieron en mil ochocientos setenta y siete á Don Francisco Cedeño y Ayala, quien enagenó esas veinte y dos cuer-

das y media de terrenos á Don Domingo Pietri en siete de Junio de mil ochocientos noventa y tres, poseyéndola, tanto Pietri como los antiguos vendedores, quieta, pacífica y públicamente sin interrupción alguna, cultivándolo y usufructuándolo como únicos y absolutos dueños; y que los testigos Don Monserrate Pacheco, fólio 1834 vto., Mateo Vélez Cintrón, fólio 1836 vto., y Gregorio Santiago y Rodríguez, fólio 1839 vto., manifestaron en sus respectivas declaraciones que siempre han tenido sus domicilios en los barrios de Rubias y Vegas, de Yauco, desde mil ochocientos treinta y cuatro en adelante y sabían perfectamente los moradores y poseedores de tierras en esos barrios, constándole por tanto que Don Fernando María Pinatell, Don Estéban Gallart, Don Juan Aubert, Don Pedro Mompesart y Don Pedro Lázaro Verges, jamás han poseído ni cultivado tierras de las comprendidas en el barrio de Rubias ni en el de las Vegas en el año de mil ochocientos treinta y cinco ni los subsiguientes.

25o.—*Resultando*: que transcurrido el término de prueba, se unieron á los autos los legajos de las practicadas por ambas partes.

26o.—*Resultando*: que la parte actora por medio de su Procurador, fólio 2069, manifestó haber transado el litis con Don Angel Pedro Agostini, desistiendo de la demanda con respecto á ese señor, á lo que se acordó por el Juzgado que se ratificara la demandante en el desistimiento, sin que aún lo verificara.

27o.—*Resultando*: que entregados los autos para conclusiones á la parte actora los devolvió, promoviendo incidente de nulidad de las actuaciones practicadas por el Juez Municipal de Yauco y tramitado el incidente se dictó sentencia declarando sin lugar y establecida apelación, no se personó el apelante, declarándose desierto el recurso, fólio 2059 al 2122.

28o.—*Resultando*: que las partes que evacuaron el trámite de conclusiones, según consta de sus respectivos escritos, fólios 2144 y 2192, alegando en ellos lo que creyeron conveniente á sus derechos, pero prescindiendo la parte actora de lo referente á Don Angel Pedro Agostini por manifestar que contra el mismo no se seguía el pleito en virtud del desistimiento que hiciera en los autos.

29o.—*Resultando*: que en la sustanciación del presente juicio se han observado las prescripciones legales.

1o.—*Considerando*: que las acciones reivindicatorias sólo pueden ejercitarse por los que se estimen legítimos dueños de la cosa ó inmueble que se trate de reivindicar, justificándose auténticamente ese carácter de dueño y la identidad principalmente de lo que sea objeto de reivindicación, según la sentencia del T. S. 31 de Marzo de 1865.

2o.—*Considerando*: que los medios para identificar á un inmueble han de estar accmodados á los de prueba que permite la Ley de trámites, cuando se niegue la existencia de tal indentidad, figurando, en primer término, la prueba pericial corroborada por datos y antecedentes que produzcan en el Juzgador el convencimiento pleno de la veracidad ó fiel testimonio de los peritos.

3o.—*Considerando*: que al que intenta la acción reivindicatoria corresponde probar el dominio de la cosa que quiere reivindicar, según sentencia del T. S. de 27 de Diciembre de 1865, 20 de Febrero de 1866 y 23 de Noviembre de 1865.

4o.—*Considerando*: que uno de los requisitos de la acción reivindicatoria es fijar la identidad de la cosa que se quiere reivindicar, según sentencia de 7 de Diciembre de 1866.

5o.—*Considerando*: que al demandado le basta poseer, y el demandante está obligado á probar la acción reivindicatoria, según sentencia de 20 de Febrero de 1866.

6o.—*Considerando*: que para demandar el dominio de un inmueble, es preciso que se determine sin género de duda lo que se demanda, y que se pruebe que la finca que se reclama es la misma, cuyo dominio se alega, Ley 25, Título 2o., Partida 3a.

7o.—*Considerando*: que versando el presente litigio sobre el ejercicio de acciones reivindicatorias, la resolución que en él se dicte, ha de descansar principalmente en la eficacia y validez legal de los títulos que han aducido demandante y demandado para comprobar su derecho á la cosa litigiosa.

8o.—*Considerando* : que el título de donde arranca la acción ejercitada por la parte demandante y cuya eficacia ha de ser apreciada en este fallo en contraposición á los aducidos por los demandados, no es otro que la concesión de ocho caballerías de tierras hechas á Don Fernando María Pinatell por la Junta Superior de terrenos baldíos de esta Isla en cuatro de Diciembre de mil ochocientos treinta y cuatro, sin que sea dable admitir como fuente de derecho para la parte actora y por lo que hace á la descripción de las tierras mercedadas, las escrituras de trasmisión de las mismas á Gallart, Aubert y Mompesart, por cuanto en las mismas se consignan notables variantes de linderos y colindancias con relación á la primitiva concesión que no reciben cumplida justificación.

9o.—*Considerando* : que la mencionada concesión hecha á Pinatell de cuatro caballerías de tierra en el barrio de las Vegas, equivalentes á ochocientas cuerdas, afecta una forma rectangular por cuanto en el mismo título se describen como comprendidas entre cuatro líneas de cuarenta y veinte cuerdas de extensión, respectivamente, con determinación del punto cardinal sobre que cae cada una de dichas líneas, siendo uno de los vértices del susodicho rectángulo la desembocadura de la quebrada de los Almendrones en el río nombrado "Chiquito".

10o.—*Considerando* : que ni en el escrito de demanda, ni en los demás de trámites, la parte actora ha concretado con la debida exactitud y precisión la verdadera situación y descripción de los terrenos que trata de rivindicar, comprendidos en la concesión Pinatell, ni en el período probatorio, ha comprobado con la oportuna prueba pericial, que los por ella determinados, bajo la forma de un polígono irregular, sean los mercedados á Pinatell; faltando por tanto la identidad de la cosa litigada, piedra angular de los juicios de la índole del presente en que se ejercitan acciones reivindicatorias.

11o.—*Considerando* : que ni el Decreto sentencia del Consejo de Estado en el pleito entre Don Pedro Lázaro Verges y la administración sobre reversión al Estado de las tierras mercedadas á Don Fernando María Pinatell, como los demás documentos y pruebas aducidos por la parte demandante, producen la justificación necesaria en derecho para la identidad de las tierras que se tratan de reivindicar; y lo convence y demuestra lo resuelto por el Consejo Contencioso al pedirse el cumplimiento de aquel Decreto Sentencia en

cuanto á la posesión de las tierras en que se desestima la pretensión, porque no decidían la cuestión de identidad los documentos y planos presentados, sobre los cuales estaba el título de la primitiva concesión, en que se señalaban los cuatro puntos de deslinde, y era natural que se hubiera citado la cuchilla de las Aceitunas y de Carrizales, si por acaso en ellas estuvieran los límites de la concesión Pinatell.

12o—*Considerando*: que en oposición al título del actor, los demandados han presentado documentos públicos y solemnes en virtud de los cuales poseen las tierras que se tratan de reivindicar, inscritos en el Registro de la Propiedad, cuyos documentos no pueden estimarse nulos ni menos ineficaces, por no aducirse prueba alguna que justifique ese vicio de nulidad; y por otra parte, siendo el único fundamento que para ello alegaba la parte actora, el que las tierras comprendidas en esos títulos le pertenecían por otro título de mayor fuerza y eficacia, ha quedado destruído ese fundamento por la falta de prueba de la identidad de los terrenos.

13o.—*Considerando*: que la excepción de prescripción fué alegada por los demandados para el caso de que no prosperara la de *sine actione agis*, y por tanto, resolviéndose sobre esta última en sentido favorable á su admisión, no cabe hacer apreciaciones sobre dicha prescripción y pruebas que para justificarla se han traído á los autos, quedando sujeta á tales apreciaciones, si ulteriormente se acreditara la identidad de las tierras objeto de reivindicación.

14o.—*Considerando*: que en cuanto á la reconvención formulada por el demandado Don Domingo Pietri, no procede tampoco resolverla, pues fundándose en que la inscripción de los títulos de la parte demandante es nula, por estar inscrita la finca á nombre de distinta persona, esta circunstancia no se acredita en forma alguna, por la falta de identidad ya referida.

15o.—*Considerando*: que con relación al demandado Agostini, cabe apreciar, no solo el desistimiento voluntario hecho en auto por la representación de las demandantes, por más que dicho acto no fué debidamente ratificado personalmente por las mismas señoras demandantes, si que también por el mérito favorable que se desprende del acto de mensura y plano levantado por la Inspección de Montes de esta Isla, de conformidad con un representante de

la parte actora en Enero de mil ochocientos ochenta y seis, y de la diligencia pericial de identificación practicada en este juicio, en cuanto en uno y otro acto se consigna que las tierras poseídas por Agostini, no pueden formar parte de las mercedadas á Pinatell, por cuanto aquellas se encuentran al Norte de la quebrada de los Almendrones, y las segundas deben figurar al Sud de dicha quebrada.

16o.—*Considerando* : que en virtud de las apreciaciones que anteceden es de estimarse probada la excepción propuesta de *sine actione agis*, y por tanto, debe absolverse á los demandados.

17o.—*Considerando* : que no justificada la acción establecida, es de apreciarse temeridad por la parte actora.

*Vistas* las disposiciones legales citadas.

*Fallo* : que declarando con lugar la excepción *sine actione agis* propuesta por los demandados, debo absolver y absuelvo de la demanda á Don Domingo y Don Francisco Pietri, Don Rafael Gómez Díaz, Don José Gregory Ramos, Don Francisco Lluch Negroni, Don Francisco Cedeño y Ayala, Fraticelli Hermanos, Don Vicente Limarola y Benigni y Don Angel Pedro Agostini, con las costas á cargo de la parte actora. Y se declara sin lugar la reconvención propuesta por la parte de Don Domingo Pietri. Notifíquese esta sentencia en cuanto á los demandados que se encuentran en rebeldía con arregio al artículo 768 de la Ley de Enjuiciamiento Civil, insertándose los edictos en la Gaceta Oficial de la Provincia. Así definitivamente juzgando lo pronuncio, mando y firmo.—Eduardo Acuña.''

Esta sentencia fué apelada por la representación de las demandantes para ante la antigua Audiencia Territorial de la Isla, y sustanciada la apelación, se dictó por la Sala de dicha Audiencia la siguiente sentencia:

''En la Ciudad de San Juan Bautista de Puerto Rico, á los veinte y siete días del mes de Diciembre de mil ochocientos noventa y siete. Vistos estos autos declarativos de mayor cuantía, promovidos por el Juzgado de Primera Instancia de San Germán, entre partes de la una, Doña Francisca Estevelina Remond por sí y como heredera abintestato de su hijo Don Juan Arturo Verges y Doña María Ver-

ges Remond, dirigida en esta Superioridad por el Letrado Don
Hilario Cuevillas Hernández y representada por el Procurador Don
José Manuel Rossy y Guerra, como apelantes y demandantes, y de
la otra Don Domingo Pietri y Pietri, dirigido por el Letrado Don
José Severo Quiñones y Caro y representado por el Procurador
Don Emigdio S. Ginorio y Alayón, hallándose en rebeldía en esta
Superioridad sus consortes Don Francisco Cedeño y Ayala, Don
Angel Pedro Agostini y Natali Don Vicente Limarola y Benigni,
Don Francisco Lluch Negroni, Don Francisco Pietri, Don José
Gregory y Ramos y Fraticelli Hermanos, éstos tres últimos decla-
rados también rebeldes en el inferior, así como Don Rafael Gómez
Díaz que falleció después, como apelados y demandados, sobre rei-
vindicación de terrenos, nulidad de expedientes posesorios y enage-
naciones por escrituras públicas y cancelaciones en el Registro de
la Propiedad, pendiente ante NOS en virtud de apelación interpues-
ta por los demandantes de la sentencia dictada con fecha once de
Diciembre de mil ochocientos noventa y cinco, en la que se declara
con lugar la excepción *sine actione agis* propuesta por los deman-
dados, se absuelve de la demanda á Don Domingo y Don Francisco
Pietri y demás consortes con las costas á cargo de la parte actora,
y sin lugar la reconvención propuesta por la parte de Don Domingo
Pietri. Aceptando los Resultandos del inferior y

*Resultando* que dictada la sentencia é interpuesta apelación por los
demandantes les fué admitida, citándose y emplazándose las partes,
elevándose los autos instruídos y tenidos por parte por el apelante en
esta Superioridad Don José Manuel Rossy y Guerra, y por el
apelado Don Domingo Pietry el Procurador Don Emigdio S. Gi-
norio, formado el apuntamiento se entregaron los autos para ins-
trucción al apelante, quien al devolverlos por otrosí, según el ar-
tículo 861, solicitó el recibimiento á prueba en segunda instancia
por no haberse podido practicar en la primera parte de la pro-
puesta, porque habiéndosele concedido y admitido la prueba pe-
ricial, nombrados dos peritos y el tercero en forma para la acep-
tación de uno de ellos, se dirigió exhorto al Juzgado de Ponce, de-
volviéndose con la manifestación de que no aceptaba y por ello
convocó el Juzgado á comparecencia, nombrándose por el Juzgado
el que debía suplirlo, quien aceptó, exponiendo los peritos que no
podían terminar la operación por falta de tiempo, pues sólo pu-
dieron reconocer uno de los lados del rectángulo y demostrando
ésto que no pudo practicarse la prueba, es una de las condiciones

del artículo 861, párrafo 2o. de la Ley de Enjuiciamiento Civil, procedía el recibimiento á prueba en la segunda instancia.

*Resultando* : que evacuada la instrucción por el apelado, se opuso á la apertura á prueba por ser imposibles al apelante que la propuso en primera instancia en no haberse podido practicar, pues en vez de poner actividad y diligencia para su ejecución, dejó transcurrir tiempo en presentar el exhorto para notificar al perito nombrado que no aceptó, resevando en su poder el exhorto de esa no aceptación desde el diez y ocho de Agosto al tres de Septiembre en que lo presentó, y lejos de gestionar lo conveniente, consintió la providencia del once que señala los peritos el quince de Septiembre para principiar las operaciones y comparecieran el diez y ocho á emitir dictamen, sin pedir la suspensión de ese término, por lo que se opone á la apertura á prueba.

*Resultando* : que declarada sin lugar la apertura á prueba en segunda instancia, por no constar las causas no imputables de haberse podido practicar, antes al contrario, aparecer de autos lo contrario, dado que el exhorto devuelto por el Juzgado de Ponce en el siete de Septiembre y diligenciado en ese día y el siguiente que le fué entregado, no se presentó en San Germán hasta el siete, proveyéndose á su instancia ese día la convocatoria á elección de nuevo perito para el once, designándose el que debía suplirlo, que aceptó el cargo y señalado en ese día once el quince para la práctica de la prueba pericial, debiendo los peritos comparecer el diez y ocho á emitir dictamen, demostrando esas providencias consentidas que si la prueba no se practicó, fué por no haber activado ni pedido lo conveniente, pues ni aún la suspensión del término fué solicitada.

*Resultando* : que suplicado el auto de la Sala antes referido, dictado en veinte y dos de Agosto de mil ochocientos noventa y seis y tramitado, se declaró sin lugar por los propios fundamentos, y tramitado el recurso, se señaló día para la vista, con asistencia de los Procuradores y Defensores de las partes personadas, durante dicha vista desde el veinte y siete de Noviembre hasta el siete del actual, habiéndose observado en esta segunda instancia las reglas de sustanciación del procedimiento.

Siendo ponente el Magistrado Suplente Don Juan Morera Martínez.

Aceptando los Considerandos segundo, décimo, duodécimo, décimo cuarto, décimo quinto, décimo sexto, décimo séptimo, y

*Considerando*: que al pedir los demandantes se declare que la finca de ochocientas y pico de cuerdas objeto de su reclamación y sus plantaciones le pertenecen en propiedad y dominio pleno, debiendo dejársela libre y expedita á su disposición, que son nulos y de ningún valor los expedientes posesorios que se instruyeron y aprobaron y las ventas que refiere, cancelándose las inscripciones en el Registro de todos esos actos nulos, en cuanto se opongan á los títulos de dicha finca, esas peticiones implican, ejercitó el demandante una acción real reivindicatoria.

*Considerando*: que para ejercitar con éxito esa acción es preciso comprobar cumplidamente no solo el dominio que se reclama, sino la identidad de la cosa reclamada, según lo tiene con repetición declarado el Tribunal Supremo de Justicia.

*Considerando*: que según dicha jurisprudencia y las leyes para usar la acción reivindicatoria se exige necesariamente la existencia de un título cierto sobre las cosas que son objeto de la reivindicación, y ese título no es otro que la concesión hecha por el Estado á Don Fernando María Pinatell, que no comprueba el dominio de la cosa que se trata de reivindicar, base esencial de la acción ejercitada.

*Considerando*: que si bien los demandantes son dueños de la concesión Pinatell por cuatro caballerías de terreno, ó sean ochocientas cuerdas que fueron mensuradas antes de expedirse el título de amparo, formando, según dicha mensura, un rectángulo de cuarenta cuerdas por veinte de extensión, no es posible admitir sin prueba ni justificación alguna la variante que el actor sostiene, introducida en la venta hecha por Don Juan Aubert á Don Pedro Mompesart, porque esa variante hace que el terreno presente una figura de un polígono irregular, debida á la variación de colindancias, rumbos, puntos y límites; llamando la atención que los terrenos de Don Antonio Montes que se afirma fueron los de Diego Torres, colinden al Sur y no estén situados como en la concesión en la boca de la quebrada Almendrones en el río Chiquito, la que, según el plano y mensura Verges, practicado en forma legal alguna y en el que fundan los demandantes su acción, está á gran distancia de dicho punto y colindante.

*Considerando*: que siendo esa boca de la quebrada Almendrones un punto ó vértice del rectángulo de la concesión Pinatell, según el título de amparo, ese importante dato debe servir de base á toda mensura y deslinde, si los demás puntos hubieren desaparecido como se afirma.

*Considerando*: que al señalarse en la concesión Pinatell los cuatro puntos cardinales del deslinde, parece natural se hubieran citado las cuchillas de las Aceitunas Carrizales, si en ellas estuvieran los límites ó colindaran por lo que es de sentarse que los planos y mensuras practicadas por la inspección de montes, en especial el efectuado con asistencia del perito y apoderado de la sucesión Verges, son los que fijan y determinan el sitio y límites que á los terrenos de dicha concesión Pinatell corresponde.

*Considerando*: que según esos planos y mensuras y demás pruebas practicadas, los terrenos reclamados á los demandados, quedan al Norte de la concesión Pinatell, y por tanto fuera de ella.

*Considerando*: que las pretensiones de Don Pedro Lázaro Verges y su sucesión, no han podido por ello prosperar ni conseguir el cumplimiento del decreto sentencia del Consejo de Estado en el pleito con la administración, sobre reversión al Estado de los terrenos concedidos á Pinatell, desestimándose dichas pretensiones porque se reclamaban terrenos diversos de ella y no decidían la cuestión de identidad los documntos y planos que presentara, sobre los cuales estaba el título de la primitiva concesión en que se señalan los cuatro puntos de deslinde, límites de ella.

*Considerando*: que los demás documentos y pruebas por la parte actora aducidos, no producen la justificación necesaria en derecho ni el convencimiento racional para la identidad de los terrenos que se trata de reivindicar.

*Considerando*: que lejos de venirse en conocimiento de ello, nace el convencimiento racional contrario por estar al Norte de la concesión Pinatell y fuera de ella las tierras reclamadas, y porque entre esas reclamadas se ha demandado á Pietry como situadas en el barrio de Rubias, una finca de que es dueño y tiene su dominio inscrito por cincuenta cuerdas radicadas en el barrio de Río-Prieto, Poniente, y á Don Angel Agostini por terrenos fuera de la concesión que le fueron vendidos por Don Vicente Limarola y á éste por Fraticelli Hermanos, ambos demandados también, cuyas tie-

rras proceden de la concesión hecha por el Estado en mil ochocientos cuarenta y nueve á Don Francisco Díaz Resino.

*Considerando:* que la excepción de prescripción fué alegada por los demandados para el caso de que no prosperara la de *sine actione agis,* y por tanto, resolviéndose sobre esta última en sentido favorable á su admisión, no cabe hacer apreciaciones sobre dicha prescripción y pruebas que para justificarla se han traído á los autos.

*Considerando:* que los linderos fijados en la escritura producida con la demanda, alterando los contenidos en la concesión Pinatell y los fijados por manifestación sola del encargado de presentar los títulos en el Registro de la Propiedad, sin que aparezca confirmada nota alguna por los dueños de los predios que se dicen colindantes, no pueden perjudicar á éstos por esa circunstancia, por ser terceros.

*Considerando:* que al confirmarse la sentencia las costas deben imponerse al apelante.

*Vistas* las sentencias del Supremo de 27 de Septiembre del sesenta y cinco, diez y ocho de Mayo del sesenta y seis, cinco de Abril del sesenta y siete, veinte y dos de Mayo del ochenta, y veinte y seis de Mayo del ochenta y seis, los artículos 348, 349, 430, 438 y 445 del Código Civil, Real Orden de siete de Octubre del sesenta y siete, para la aplicación de la Ley Hipotecaria y los artículos 596, 601, 631 y 658 de la Ley de Enjuiciamiento Civil.

*Fallamos:* que debemos confirmar y confirmamos la sentencia apelada con las costas á los apelantes y cúmplase por el Secretario con el artículo 283 de la Ley de Enjuiciamiento Civil.

Así por esta nuestra sentencia lo pronunciamos, mandamos y firmamos.

Tomás Valls.—Federico Serantes.—Antonio Martínez,—Miguel Monreal.—Juan Morera Martínez.''

Por las sentencias que anteceden se vé que en esta causa se trata principalmente de la cuestión de si los apelantes han justificado su derecho sobre el terreno, cuyo título estaba basado en la concesión hecha por el Gobierno á Pinatell, en el año 1834. En tanto que los autos son muy voluminosos, la cuestión presentada para su resolución, es comparativamente sencilla.

¿Han demostrado los apelantes que los terrenos por ellos reclamados en virtud de la concesión hecha á Pinatell, están ahora ilegalmente retenidos por los demandados? ¿Hay cosa alguna en los autos, que demuestre que los terrenos comprendidos en dicha concesión, son los actualmente poseídos por los demandados? ¿Había justificación alguna para el cambio de colindancia relatado en la escritura otorgada por Aubert á favor de Mompesart?

Nosotros creemos que todas esas preguntas han sido contestadas por la sentencia dictada por la Audiencia Territorial. Los apelantes demuestran gran confianza en las diferentes decisiones del Consejo de Estado y el resultado de los procedimientos contencioso-administrativos. Nosotros creemos que ninguna de esas decisiones y procedimiento es obligatorio para los demandados, quienes no eran partes en los mismos. Los demandantes debían haber demostrado que los terrenos descritos en la concesión hecha á Pinatell, con las colindancias allí expresadas, son los terrenos poseídos por los demandados, ó señalado la causa y la justificación del cambio de esas colindancias. Ellos han dejado de indicar el motivo legal más insignificante para esta variación de la extensión y situación del terreno. No se ha demostrado que la Sucesión Verges ni ninguno de sus antecesores en el título, haya ejercido actos contínuos de posesión sobre el terreno transformado. Siempre subsistirá el misterio de cómo lo que originalmente era un rectángulo, se haya podido convertir en un polígono irregular.

Hay una ligera indicación en los autos, de que Aubert construyó una casa en una parte del terreno; pero parece que otra persona la derribó. En cuanto á los actos de posesión física por parte de los demandados, que consta en los autos, esas pruebas se han tomado de pleitos en que los demandados no tuvieron intervención. Nosotros hemos examinado cuidadosamente los autos, para encontrar algo que nos diera una explicación racional de la transfor-

mación efectuada en la escritura otorgada por Aubert á favor de Mompesart.

Hay dos maneras de ver esta omisión de identificación. Una es, que los apelantes han dejado de identificar los terrenos que reclaman en virtud de la concesión hecha á Pinatell; y la otra, que han dejado de demostrar que los terrenos poseídos por los demandados son idénticos á los reclamados por los apelantes. Todos los indicios en los autos, son que los terrenos de los demandados se hallan fuera de la citada concesión.

La cuestión es esencialmente una cuestión de hecho. Dicha cuestión fué estudiada lo más cuidadosamente por el Juez de primera instancia. No menos minuciosamente la estudió la Audiencia Territorial. Nosotros también hemos examinado los autos, y no encontramos motivo alguno para revocar los Resultandos de los Tribunales inferiores. Y si tuviéramos alguna duda sobre este punto, tendríamos que adoptar por guía las decisiones del Tribunal Supremo de los Estados Unidos, que dicen, que en los casos en que los Tribunales inferiores estén de acuerdo en cuanto á los hechos definitivos establecidos por la prueba, aquél Tribunal debe aceptar el parecer de los Tribunales inferiores, á no ser que éstos hayan claramente incurrido en error en la apreciación de la prueba.

*Stuart v. Hayden,* 169 *U. S., pág.* 1 *y* 14; y los casos citados en la página 14.

Nosotros aceptamos los Resultandos y Considerandos de la Audiencia Territorial, y confirmamos en todas sus partes la sentencia dictada por dicho Tribunal.

*Confirmada.*

Jueces concurrentes: Sres. Hernández, Figueras y Mac Leary.

El Juez Presidente Sr. Quiñones no formó Tribunal en la vista de este caso.